E-filing

1   PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

2   Name ___Hawkins_____  ___Jeff_____  ___A._____
              (Last)              (First)         (Initial)

3   Prisoner Number ___F-18885_____

4   Institutional Address ___Pelican Bay State Prison P.___

5   Lakeearl Drive Crescent City, Ca. 95532

6   ===============================================
                UNITED STATES DISTRICT COURT
7               NORTHERN DISTRICT OF CALIFORNIA

8   ___Jeff Hawkins A._____  )
    (Enter the full name of plaintiff in this action.)       )
9                                                   )
                        vs.                         )    Case No._____
10                                                  )    (To be provided by the clerk of court)
    ___R. Horal et. al. warden_____        )
11                                                  )    PETITION FOR A WRIT
    ___Pelican Bay State Prison_____       )    OF HABEAS CORPUS
12                                                  )
    ___5905 Lakeearl Drive_____       )
13                                                  )
    ___Crescent City,California 95532__    )
14  (Enter the full name of respondent(s) or jailor in this action)  )    PR)
                                                    )
15
    ===============================================
16                    Read Comments Carefully Before Filling In

17  When and Where to File

18          You should file in the Northern District if you were convicted and sentenced in one of these

19  counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20  San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21  this district if you are challenging the manner in which your sentence is being executed, such as loss of

22  good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23          If you are challenging your conviction or sentence and you were not convicted and sentenced in

24  one of the above-named fifteen counties, your petition will likely be transferred to the United States

25  District Court for the district in which the state court that convicted and sentenced you is located. If

26  you are challenging the execution of your sentence and you are not in prison in one of these counties,

27  your petition will likely be transferred to the district court for the district that includes the institution

28  where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1    <u>Who to Name as Respondent</u>

2        You must name the person in whose actual custody you are. This usually means the Warden or

3    jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4    you are imprisoned or by whom you were convicted and sentenced. These are not proper

5    respondents.

6        If you are not presently in custody pursuant to the state judgment against which you seek relief

7    but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8    custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9    was entered.

10    <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11        1. What sentence are you challenging in this petition?

12        (a)   Name and location of court that imposed sentence (for example; Alameda

13        County Superior Court, Oakland):

14        <u>Alameda co.Superior Ct.</u>   <u>Alameda County</u>

15        Court                     Location

16        (b)   Case number, if known <u>C-148832</u>

17        (c)   Date and terms of sentence <u>2029 Thrity years</u>

18        (d)   Are you now in custody serving this term? (Custody means being in jail, on

19        parole or probation, etc.)       Yes <u>x</u>   No _____

20        Where?

21        Name of Institution: <u>Pelican Bay State Prison</u>

22        Address:<u>P.O. Box7500 Crescent City,Ca.95532</u>

23        2. For what crime were you given this sentence? (If your petition challenges a sentence for

24    more than one crime, list each crime separately using Penal Code numbers if known. If you are

25    challenging more than one sentence, you should file a different petition for each sentence.)

26    <u>Penal Code(sec.205) Penal Code(sec.664-187)</u>

27    <u>Penal Code(sec.245sub.(a)(1)(sec.12022,subd(b)(1),</u>

28    _____

3. Did you have any of the following?

    Arraignment:                      Yes __x__      No _____

    Preliminary Hearing:           Yes __x__      No _____

    Motion to Suppress:            Yes _____      No __x__

4. How did you plead?

    Guilty _____    Not Guilty __x__   Nolo Contendere _____

    Any other plea (specify) not guilty by reason of insanity

5. If you went to trial, what kind of trial did you have?

    Jury __x__    Judge alone_____   Judge alone on a transcript _____

6. Did you testify at your trial?              Yes _____      No __x__

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment               Yes _x_      No _____

    (b)    Preliminary hearing       Yes _x_      No _____

    (c)    Time of plea             Yes _x_      No _____

    (d)    Trial                   Yes _x_      No _____

    (e)    Sentencing               Yes _x_      No _____

    (f)    Appeal                 Yes _x_      No _____

    (g)    Other post-conviction proceeding   Yes _____      No __x__

8. Did you appeal your conviction?         Yes __x__      No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal           Yes __x__      No _____

        Year: _2006_    Result: Denied

        Supreme Court of California   Yes __x__      No _____

        Year: _2007_    Result: Denied

        Any other court           Yes _____      No _x_

        Year: NA    Result: NA

    (b)    If you appealed, were the grounds the same as those that you are raising in this

1    petition?    Yes __x__    No____

2    (c)    Was there an opinion?    Yes ____    No__x__

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4    Yes ____    No__x__

5    If you did, give the name of the court and the result:

6    _____N A_____

7    _____N A_____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?    Yes ____    No__x__

10    [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11    challenged the same conviction you are challenging now and if that petition was denied or dismissed

12    with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13    for an order authorizing the district court to consider this petition. You may not file a second or

14    subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15    U.S.C. §§ 2244(b).]

16    (a)    If you sought relief in any proceeding other than an appeal, answer the following

17    questions for each proceeding. Attach extra paper if you need more space.

18    I.    Name of Court: __N A_____

19    Type of Proceeding: _N A_____

20    Grounds raised (Be brief but specific):

21    a._____N A_____

22    b._____N A_____

23    c._____N A_____

24    d._____N A_____

25    Result: ___N A_____Date of Result:___N A____

26    II.    Name of Court: ___N A_____

27    Type of Proceeding: _N A_____

28    Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS    - 4 -

a. NA _____

b. NA _____

c. NA _____

d. NA _____

Result: NA _____ Date of Result: NA

III.    Name of Court: NA _____

Type of Proceeding: NA _____

Grounds raised (Be brief but specific):

a. NA _____

b. NA _____

c. NA _____

d. NA _____

Result: NA _____ Date of Result: NA

IV.    Name of Court: NA _____

Type of Proceeding: NA _____

Grounds raised (Be brief but specific):

a. NA _____

b. NA _____

c. NA _____

d. NA _____

Result: NA _____ Date of Result: NA

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No  x

Name and location of court: NA _____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

1    need more space.  Answer the same questions for each claim.

2        [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3    petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4    499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5    Claim One: The Trial Court erred prejudicially by refusing to instruct the Jury on imprefect self-Defense

6    based on Delusion. Requiring Reversal of all counts.

7    Supporting Facts: Factual and Procudarl background. Refusal

8    to Instruct the Jury on Imprefect self-Defense based

9    upon Pet.Delusion Violated his Federal Constitution

10    Rights to due process. continues. claim 1 Pgs. 1 of 3.

11    Claim Two: The trial Court erred prejudicially by refusing to Instruct the Jury on Petitioner Voluntary

12    Intoxication.

13    Supporting Facts: Lamar Brooks testified that he believed Pet.

14    was using drugs on April 17,2004. Brooks also testified

15    that petitioner had a medicated look on his face.

16    continues, claim 2 Pgs. 4 of 6.

17    Claim Three: The trial court erred prejudicially by Instruct the Jury that it could consider Petitioner

18    Flight as evidence of consiousness of guilt.

19    Supporting Facts: Petitioner  trial Counsel objected to Instr-

20    uctions. that Pet. Flight after the offense could be

21    considered, as evidence of his cosciousness of guilt.

22    continues, claim 3 Pgs. 7 of 9 (see: Attached Pages.)

23    If any of these grounds was not previously presented to any other court, state briefly which

24    grounds were not presented and why:

25    Ground, claim 5. Petitioner sentence to maximun sentence

26    imposed at Judges discretion this premitting excess

27    sentence of the upper term prescribed by law./ newly decover

28    ed, claim, presented.

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    _____none_____

5    _____none_____

6    _____none_____

7    Do you have an attorney for this petition?                    Yes_____        No **x**_____

8    If you do, give the name and address of your attorney:

9    _____N A_____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on ____3·09·08_____          _____

14                    Date                          Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 7 -

## Statement of Facts

Petitioner, Jeff Hawkins has a long history of mental Illness,
And was dianosed as Paranoid Schizophrenic, He was suffering
from the delusion that the victim King Ninty had shot him ten
years ago while King Ninty was sleeping Petitioner beat him with
a baseball bat so severly that he suffered massive head injuries
and went into coma King Ninty survived but lost his eye sight in
one eye.

Two forensic Psychologist were appointed to determine Petitioner'
legal sanity both concluded that he was legally insane at the time
of offenses.

During the guilty phase, The prosecutor conceded that Petitioner
was delusional at the time of the attack, But argued to the jury
that he intended to kill King Ninty.

The jury found Petitioner guilty of mayhem attemped murder and, wa
assult with a deadly weapon.

At the sanity phase, both court appoined experts testified that
Petitioner was legally insane. The prosecution presented no expert
testimony in rebuttal the jury found Petitioner was legally Sane.
King Ninty shared a house with two brothers, Simul Eddie Linscomb
and their nephew, Lamar Brooks, place of address, 1050-37th street
in Oakland California.

Petitioner a friend of Brooks, was staying at the house for a few
days, during the week before April 17,2004,

Petitioner was acting strangly, he had a weird look" on his face
and told Brooks that he was hearing voices.

1

Continues
_____

And looked up at the sky and said", I hear the call."
On the evening of April 17,2004, Petitioner poured turpentine
all over the living room floor. When asked why had he done so
Petitioner stated it was air fresherner there was a really bad
stench" In the house. and that had poured the turpentine to cover
up the smell.
Simul Linscomb told petitioner to leave the residence.
Later that evening King Ninty was watching a Bruce Lee film with
the Linscomb brother and Petitioner.
King Ninty went to sleep awoke in great pain and fell out of bed,
his next memory was waking up in the hospital.
Brooks was awakened by sounds that he believed were the Bruce Lee
film he had been watching with King Ninty , he went to King Ninty
room. King Ninty face was covered with blood. Petitioner was standing
at the door. Holding the broken handle of a baseball bat.
Petitioner was calm and did not appear upset or agitated when Mr.
Brooks asked petitioner what happened, Petitioner stated King Ninty
just told me he shot me on Apgar", Brooks asked Petitioner to go
outside with him.
Petitioner did not resists when Simul Linscombs took the bat handle
from Petitioner's hand Petitioner walked up 37th street he returned
for his belongings then left again.
Accounts were made Petitioner and King Ninty had never argued this
before the attack.
On April 18,2004. At 6:23 a.m. police were dispatched to a reported
beating.

Continues

At the residence. King Ninty was transported to the hospital.
there was a strong chemical oder inside the house. Police did
recovered bloody pieces of a broken baseball bat.

At 12:31 p.m. on the date. Police were dispatched to a reported
altercation at 34th and market street in Oakland California.
Three men were fighting with Petitioner in the street. Police,
repeatedly ordered Petitioner at gunpoint to get down on the gro-
und,.Petitioner began to comply. Then took off all his clothes and
continued to stand while officers again ordered him to get down.
He took a fighting stand and was " Wide eyed" and agitated. Police
eventually took him into custody.

Police tried to interview Petitioner after his arrest. He was,
calm at first. Then became hostile, reaching toward the interview
as if he was going to punch him.

Blood on Petitioner's clothing and the broken bat matched King Ninty
DNA profile.

King Ninty was admitted to the emergency room with massive facial
Injuries Including multiple broken bones, skull and jaw fractures.
He was comatose for three days. And permanently lost sight in one
eye.

Petitioner defense was that he lacked the specific intent to committ
aggravated mayhem or to kill.

Continues
———————————

Marlin Griffth M.D. A forensic psychologist, testified as a expert
witness
Dr. Griffth was appointed by the court to determine Petitioner's
legal sanity.
Petitioner, Jeff Hawkins has a long history of commitments to,
psychiatric hospital. Each time he was Diagnosed as a paranoid,
schizophreic, hospital records indicated he suffered visual and
auditory hallucinations and paranoia.
Dr. Griffth also diagnosed Petitioner as a paranoid schizophrenic
a mental Illness characterized by Delusions, Erroneous beliefs and
hearing voices.
In Dr. Griffth opinion, Petitioner was suffering from an episode
of paranoid schizophrenia at the time of the attack on King Ninty
Petitioner's behavior preceding the attack. Including pacing and
talking to himself. Hearing voices, and pouring turpentine on the
floor had no connection to reality.
Petitioner's belief that King Ninty  had shot him ten years ago, w
was part of his delusion.
Petitioner reported to Dr. Griffth that he had visual and auditor
hallucinations, that people were out to do him harm. And that he
was on alert not to suffer harm from others.
He also reported that he was not sure his trial attorney was wo-
rking,for him.

4

Continues
_____

Petitioner was still hearing voices after his arrest. Hawkins
reported hearing voices telling him that people had shot him,
and he was paranoid about people comming into his houseing unit
at county jail. Hawkins continued to fear being harmed by others
and himself.

In closing argument, Petitioner trial counsel conceded that Petit
tioner, had the general intent necessary to commit an assult with
a deadly weapon and inflict great bodily Injury. As charged in,
count three, But argued that he lacked the specific intent requi-
red, for aggravated mayhem and attempted murder.
Dr. Griffth, who testified at the guilt phase, And Dr. Henry Hoey
were each appointed by trial court to determine Petitioner legal,
sanity.
They both  testified as expert witnesses at the sanity trial.
In the opinions of both experts Petitioner, Jeff Hawkins was,
legally insane at the time of the attack.

                    End of Statement.

Claim 1. continues, page 6.                1 of 1

Supporting facts

---

King Ninety, the victim Simul and Edward Linscomb and Lamar

Brooks, The three percipient eyewitnesses all testified that

they were wacthing television with Petitioner before the attack.

None of the occupants of the house had noticed any tension nor

animosity or argument between Petitioner and King Ninety preceding

the attack. ( Rt 2:234-325: Rt 2:457: Rt 3: 593-594.)

The evidence was uncontroverted that Petitioner was acting strangely

in the days before the attack. He had a blank or a medicated look

on his face; he looked up at the sky.

And repeatedly stated he had a call ( Rt 3:540-541-559-560.) he

poured turpentine all over the living room floor to mask an odor

that no one else perceived ( Rt 2:257-258: Rt 3:422:Rt:542.)

After the attack Petitioner stood calmly holding the baseball bat

his explanation for the attack was that King Ninety" just told me

he was that man that shot me ten years ago.

While Petitioner had been shot in 1996 there was no evidence's of

King Ninety was in fact the perpetator ( Rt 3:558.)

When police located Petitioner about seven hours after the attack

he was still wearing the pants spattered with King Ninety blood.

Petitioner took off all his clothes and assumed a fighting stance

when police ordered him to get down on the ground.
(Rt 4:654-655:766-768.)

1

claim 1. continues,                          1 of 2


Dr. Griffith Marlin S. PH. D. Clinical Forensic Psychology

testified at the guilt phase that Petitioner was suffering from

a paranoid schizophrenic episode and was severely disordered at

the time of attack ( Rt 5:884-885:888.)

Petitioner was experiencing a delusion when he reported that King

Ninety told him that he had shot Petitioner ten years ago.
(Rt 6:956.)

Petitioner trial counsel requested the trial court to instruct

the jury that attempted voluntary manslaughter was a lesser-incl-

uded, offense of the attempted murder charged in count two.
(Rt 6:999.)

Petitioner request was made on the theory of imperfect self-defense

based upon delusion.

Dr. Griffith, directed towards Petitioner states you believe that

person was responsible for shooting you,even ten years later. And

you are in fear of that person, as Dr. Griffith testified that

Petitioner was constantly on guard, constantly trying to protect

himself from individuals that he though were going to harm him and

therefore even though it was a completely unreasonable belief that

Mr. Ninety might harm Petitioner it is certainly based on the

testimony of Dr. Griffith and the facts we've heard that Petitioner

was acting upon that delusional belief that Mr. Ninety was at best

a extreme danger to him and he was responding to that extreme

danger.
(Rt 6:1003.)

claim 1. continues,                          1 Of 3

The trial court denied the rquested istructions. Stating,
can you have an imperfect self-defense based upon a delu-
sion? I think that's a stretch."
(Rt 6:1005.)

The prosecutor conceded, in closing argument that Petitioner
was a paranoid schizophrenic and was delusional about who hurt
him the time of the attack.

The prosecutor argued that he may have been delusional about
who hurt him... but his reason for bludgeoning and beating King
Ninety was a rational one.
( Rt 6:1045.)

The trial court"s refusal to instruct the jury on the theory of
imperfect self-defense base on delusion precluded Petitioner's
trial counsel from arguing that Petitioner was acting under the
the actual but unreasonable belief in the necessity to defend
himself, and precluding the jury from finding that the offense
was attempted voluntary manslaughter and not attempted murder.
The refusal to instruct the jury on imperfect self-defense base
upon Petitioner's delusions violated his Federal Constitutional
right's to due process and to present a defense.
United States Constitution violation of 5th,6th and 14th Amendment
of the United States Constitution.


                    Therefore Requring Reversal.



                              3

Claim 2. continues,                    2 of 4


Supporting facts
———————————————


Lamar Books testified that he believed Petitioner was using drugs
on April 17,2004. Brooks I think he had relapsed... started using
drugs again.
(Rt 3:615.)

Brooks testimony was in support of observations of cocaine parap-
hernalia, around the house. Brooks did not see Petitioner ingest
drugs. But saw items in the house that suggested Petitioner might
have been using cocaine.
(Rt 3:616.)

Brooks testified that Petitioner had a Medicated look on his face
before the attack. And that his movements were mechanical.
(Rt 6:540:541:587.)

All evidence suggested a sudden and impulsive act of violence.
Petitioner was watching television with victim and others before
the attack.
(Rt 2: 324-325:Rt 2:457.)

He made no Attempts to escape but stood holding a bloody bat handle
(Rt 3:549.)

He did not leave until he was told to do so. Petitioner later re-
turned to the house.
(Rt 3: 557: 569.)

And was arrested hours later a few blocks away. After taking off
all of clothes in the middle of the street.
(Rt 4:654-655:Rt  :766-768.)

Even the apparent motive that King Ninety had shot Petitioner ten
years ago.
(Rt 6:956.)

4

claim 2. continues,                          2 of 5


Appears to have been the product of Petitioner delusional thinking

Dr. Griffith testified at the guilt phase Petitioner primary dia-

gnoiss was paranoid schizophrenia.

However in Dr. Griffith opinion the secondary diagnosis was bases

in part upon Petitioner hospital records dating from 1996.
(Rt 6:970.)

In Dr. Griffith opinion the uses of cocaine and other drugs exac-

erbates the psychotic conditions and cocaine specifically would

tend to increase whatever those psychotic symptoms are.
(Rt 6:971.)


Petitioner trial counsel requested instruction on Petitioner was
voluntary
voluntary Intoxication ( CALJIC No. 4.20,4.21,4.21.1 and 4.22.)
(Rt 6:1014.)

The trial court refused to give any the requested instructions

requested by counsel.

Petitioner trial counsel pointed out when he requested instructions

we've already had some questions from the jury regarding what con-

sequence of cocaine uses might be in conjunction with, Mr. Hawkins

mental state.
(Rt 6:1015.)

The trial court had recieved the following questions from jurors

during the guilt phase.

                    Jury: was mr. Hawkins tested for cocaine
                          after he was taken into custody?
                          was he tested for alcohol?(ct 2:252.)
                          dose the uses of cocaine at a part-
                          icular time affect one memory or
                          what that person can remember during
                          that time.(ct 2:255.)


5

claim 2. continues,                    2 of 6


A questions that was crossed out, read would cocaine use possibly

increase delusions and/or hallucinations?(ct 2:256.)

The jury questions about the effect of cocaine use on Petitioner

mental state reinfored the prejudicial effects of the error.

The jury questions demonstrated that the jury was focused on

whether the combined effect of Voluntary Intoxication.
(ct 2:257.)

And Petitioner mental illness may have adverse affect of Petition

mental state at the time of the attack.


            The contitutional Error therefore cannot be
regarded as harmless beyond a reasonable doubt.
Violation of Petitioner Federal Constitutional Rights, to present
a defense and to a trial by jury guaranteed by the Fourteenth,
Amendment.


            Therefore Requiring Reversal.

claim 3. continues,                        3 of 7


Supporting facts
—————————————


On the evening of April 17,2004. Petitioner poured turpentine all

over the living room floor.

When ask why had done so Petitioner stated it was air" freshener"

there was a really "bad stench" in the house and that he had poured

the turpentine to cover up the smell.

Simul linscomb told Petitioner to leave the residence.
(Rt 2:257-258:Rt 3:422:Rt 3:542.)

Later that evening King Ninety was watching a Bruce lee film with

the Linscomb brother and Petitioner.
(2:409.)

King Ninety went to sleep awoke in great pain and fell out of bed

His next memory was waking up in the hospital.
(Rt 2:410:414.)

Brooks was awakened by sounds that he believed were the Bruce lee

film he had been watching with King Ninety.
(Rt 3:596.)

Brooks went to King Ninety room. King Ninety face was covered in

blood. Petitioner was standing at the door holding the broken end

handle of a baseball bat.
( Rt 3:597.)

Petitioner was calm and did not appear upset or agitated.
( Rt 3:599.)

When Brooks asked Petitioner what happened Petitioner stated King

Ninety just told me he was the man that shot me on Apgar.
( Rt 3:605:608.)

Brooks ask Petitioner to go out side with him Petitioner did not

resist when Simul Linscombs took the bat handle from Petitioner

hand. ( Rt 2:339.)

claim 3. continues,                          3 of 8

Petitioner and King Ninety had never argued before the attack.
( Rt 2:324:325: Rt 2:457:Rt 3:593:594.)

Petitioner walked up 37th street he returned for his belongings

then left again.
( Rt 3:610:611.)

                    On April 18,2004. at 6:23 a.m. police were

dispatched to a report beating at the residence at 1050 37th.

street in Oakland California.

King Ninety was transported to the hospital. There was a strong

chemical odor inside the house. Police recovered bloody pieses

of a broken baseball bat.
( Rt 1:134:135:176.)

At 12:31 p.m. on the same date, Police were dispatched to a reported

altercation at 34th and market street Oakland.

Three men were fighting with the Petitioner in the street.

Petitioner subsequently attacked. Police reportedly ordered at

gun point to get down on the ground. Petitioner began to comply

then took off all his clothes again officer ask Petitioner to get

down on the ground. Petitioner took a fighting stance.

And was wide-eyed and agitated.( Rt 1:232:246.)

Petitioner made no attempted to leave the house after the attack.

But stood calmly holding the broken bat. He did not leave until

one of the housemates escorted him out of the house.

And later returned for his clothings.
( Rt 3:549:557.)

Approximately seven hours later Police found him in the street a

few blocks away being attack by friends of King Ninety.
( Rt 4:651-653.)

8

claim 3. continues,                      3 of 9

Petitioner trial counsel objected to instructions that Petitioner

flight after the offense could be considered as evidence of his

consciousness of guilt.
( Rt 6:1018.)

Trial court instructed on flight over Petitioner objection.
( Rt 6:1115.)

before the trial court posed the juror's question to Dr. Griffith
( Rt 6:971.)

The failure to correctly instruct the jury on flight as evidence

of consciousness of guilt lessens the prosecution's burden and

allows the jury to draw impermissible inferences of guilt.

The sole issues for the jury is to determine was whether Petitioner

acted with specific intent to kill.

The erroneous Flight Instruction permitted the jury to improperly
consider his post-offense conduct.
As evidence of his intent at the time of the attack for the rea-
sons, stated inpart 1 and 2 the prosecution case was not overwhe-
lming.

That, the errors can not be regarded as harmless in violation of
Petitioner's Rights to a fair jury trial and Due Process.
                         Violation of the 6th and 14th Amendment
of the United States Constitution.

                         Therefore, Requring Reversal.

Cliam 4. continues,                    4 of 10

> The record establishes as a matter of law that
> Petitioner was legally Insane at the time of
> commission of to the charged crime.

Supporting facts

Petitioner defense during trial Hawkins, Jeff lacked the specific

intent commit aggravated mayhem or to kill.

Marlin Griffith M.D. a Forensic Psychologist testified as expert

witness.
(Rt 5:878.)

Dr. Griffith was appointed by the court to determine Petitioner"s

legal sanity.

Petitioner Hawkins had a long History of commitments to psychiatric

hospitals each time Petitioner was diagnosed as a paraniod schizo-

phrenic.

Hospital records indicated (Rt 5:886-887.) Petitioner suffered

visual and auditory hallucinations and paranoid.

Dr. Griffith aslo diagnosed Petitioner as a paranoid schizophrenic

a mental illness chracterized by delusions erroneous beliefs and

hearing voices.(Rt 5:884:890-891.)

In Dr. Griffith opinion Petitioner Hawkins was suffering from an

episoda of paranoid schizophrenia, at the time of the attack on

King Ninety.(Rt 5:884-885;888.)

10

claim 4. continues,                    4 of 11


Petitioner behavior preceding the attack including, pacing, talking
to himself hearing voices and pouring turpintine on the floor.
had no connection to reality.(Rt 5:888-889.)

Petitioner belief that King Ninety had shot him ten years ago was
part of his delusion.(Rt 5:956-957.)

Petitioner reported to Dr. Griffith that he had visual and auditory
hallucinations that people were out to do him harm.

And that he was on alert not to suffer harm from other.(Rt 5:889.

He also reported he was not sure his trial attorney was working
for him.(5:903.)

Petitioner was still hearing voices telling him that people had
shot him and he was paranoid about people coming into his housing
unit at the county jail.

Petitioner continued to fear being harmed by others and himself.
( Rt 6:939-940.)

Incloseing arguments Petitioner trial conceded the Petitioner had
the general intent necessary to commit an assault with a deadly
weapon and inflict great bodily injury as charged in count three:
but argued  that he lacked the speific intent required for aggra-
vated mayhem and attempted murder.(Rt 6:1073:1077.)

During Petitioner's trial both experts testified in the sanity
trial agreed.

Dr. Hoey and Dr. Griffith concluded that Petitioner was not guilty
by reasons of insanity.


                              11

claim 4. continues,                          4 of 12


During there examinations of Petitioner both Doctor's testified

patient was severely, mentally disordered and incapble of,

distingishing right from wrong or understanding the nature and

quality of his acts.(Rt 7:1264:1323.)
see: supporting Documents, Addenum c.


The prosecution present no experts during trial of sanity phase

but relied solely on testimony of Police officer, Dunakin that he

the Petitioner was not at the house where King Ninety had been,

attacked.

And made an injury to account for blood on his clothes.(Rt 7:1255

Dr. Griffith during the sanity phase testified addressing the

issues of Petitioner's post-arrest statement.

Dr. Griffith testified the post-arrest statement did not change

his expert opinion.

                    Dr. Griffith: Mr Hawkins is extremly paraniod
                                  and very guarded very suspicious
                                  an he not likely to disclose in
                                  any open honest way any information
                                  about himself the whereabout, people
                                  he knows people he dose not know.


                              12

claim 4. continues,                    4 of 13

The, overwhelming evidence present on the issues of Petitioner
      legal sanity compelled the conclusion that he was legally
      insane.
      On the record no reasonable juror could have concluded
      that Petitioner was sane at the time of the offense.


                  The, Judgment of sanity must therefore
                       be Reversed.

Claim 5. continues,                           5 of 14

> Petitioner was sentence to maximun sentence Imposed
> by trial Judge discretion premitting excess sentence
> to the upper term prescribed by law.

Supporting facts

On Sepember 27,2004 Information no.C148332 was filed in the superior
courtt of Alameda county. Charging Petitioner, Jeff Hawkins with
the following felony offenses:

> In count one. Aggravated mayhen(sec.205);

> In count two. Attempted murder (sec.664/187,subd.
> (a):

> In count three, assault with a deadly weapon(sec.245.)
> subd.(a) (1).

The information futher alleged that Petitioner used a baseball
bat in the commission of counts one and two(sec.12022.subd.(b)(1)
inflicted great bodily injury casing a coma due to brain injury
(sec.12022.7subd. (b). in count two and three: and that Petitioner
had suffered six prior felony.

Convictions, including one serious felony (sec.667.subd.(e)(1):
sec1170.12 subd.(c)(1):and one prior prison term.
(sec.667.5.subd.(b) (clerk's transcript. vol. 1 pages,100-106.)

Petitioner was arraigned entered pleas of not guilty and not guilty
by reason of insanity, and denied the enhancements.
(ct 1:108:119.)

On November 8,2005. A jury trial commenced on Petitioner guilt.
(ct 1:191.) On December 8,2005. The jury commenced deliberations.
(ct 2:271.) On December 12,2005. The Jury returned verdicts finding
Petitioner, not guilty of aggravated mayhem.

In count one: guilty of the lesser included offence of mayhem(sec
203.) guilty of attempted murder in court.

In count two: and guilty of assault with a deadly weapon and great
bodily injury enhancement true. (ct 2:327.)

Petitioner waived jury trial on the prior convictions. (ct 2:331.
following a court trial the trial court found the six prior conv-
ictions, true including one serious felony prior conviction and a

claim 5. continues,                          5 of 15


Separate, prior prison term.(ct 2:349.).

                        On December 14,2005. a jury trial commenced
on Petitioner sanity.(ct 2:348.) On December 15,2005. the Jury
commenced deliberations.(ct 2:349.)

On December 16,2005. The jury returned a verdict finding the
Petitioner legally sane.(ct 2:356.)


On March 1,2006. Petitioner was sentenced to a total term of
thirty years in state prison, as follows:

                The aggravated term of nine years for the
                murder incount one. doubled(sec.1170.12,
                subd.(d)(1):

A consecutive term of five years for the great bodily injury en-

hancement(sec 12022.7.subd. (b).

A consecutive term of one year for the use of a deadly weapon en-

hancement(sec.12022. subd.(b)(1):

A consecutive term of five years for the serious felony prior

conviction (sec.667.subd.(a)(1):

A consecutive term of one year for a separate, prior prison term

/sec.667.5 subd.(b).


Petitioner was ordered to pay $1.200 restitution to the victim,
$932.to the victim's compensation board: A $.5000 restitution
fine (sec. 1202.4 subd.(b): and $5.000 parole revocation fine
(sec. 1202.45); he received 784 days presentence custody credits
including 681 actual days plus 103 days conduct credits.
(ct 2:418: 429-432.)


Petitioner filed notice of appeal on March 15,2005.
(ct 2;433.)


15

claim 5. continues,                    5 of 16


File no. 004-05188.

Trial counsel Declaration inregards to Petitioner sentenceing
phase, stateing.

> As a result, I would calculate Mr. Hawkins exposure
> as the following Mayhem is punishable by two, four,
> or eight, years Attempted Murder is punishable by five
> seven or nine years with an additional one year for
> the use of a deadly weapon and an additional five years
> for great bodily injury clause; assault with a deadly
> weapon is punishabble by two, three or four years with
> either an additional one year for use of deadly weapon
> or an additional five years for the great bodily injury
> clause.

The strike" prior (1170.12(c)(1) effectively doubles the state
prison sentence for the prison term for the substantive offense.
The serious felony nature of the prior conviction( Penal Code Sec
667(a)(1) adds an additional five years in state prison to the
aggregate sentence.

As a result of all of these criterion, Mr. Hawkins is looking at
the maximum sentence of 30 years on the attempted murder count
alone.
This is calculated as: 9x2=18+1+5( deadly weapon and GBI)+5
(serious felony prior)+1(prison prior). There is a legal question
about whether Mr. Hawkins could be punished additionally for may-
ham, offense( this would add an additional 1 and 1/3x2=2 and 2/3,
years to the maximum sentence). It is clear, however that the 245
(a)(1)offense is duplicative of the attempted murder offense and
would add no additional time to his exposure.


> Alternatively, the minimum sentence which Mr. Hawkins
faces is 2x2=4+5=10 years state prison. This minimum sentence is
arrived at by takink the low-term on the assault with a deadly,
weapon doubling the sentence; electing to add one year on the use
of a deadly weapon and adding the additional 5years for the serious
felony prior. This calculation would presume that the court elect
to sentence on the lesser(245(a)(1) And stay on the greater(664/
187and 203) as well as striking or staying the prison prior.


> Therefore, the sentence the trial court imposed
on Petitioner,at the trial court descretion sentenceing of the,
> upper term Violated the Petitioner's 6th and the
Fourteenth Amendment of the United States Constitution and therefore
should be Reversed.


16

EXHIBIT A

In the Court of Appeal of the State of California

Frist Appellate District          No. A113249
Division Four.
Filed, December 18, 2006.


In the Supreme Court of California. S149518

Filed, March 21, 2007.

( Pages, 1 and 2 ).

(1)



Filed 12/18/06

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

THE PEOPLE,

    Plaintiff and Respondent,

v.

JEFF HAWKINS,

    Defendant and Appellant.

**FILED**

DEC 18 2006

Court of Appeal - First App. Dist.
DIANA HERBERT

By_____
DEPUTY

A113249

(Alameda County
Super. Ct. No. C148332)

### I.

### INTRODUCTION

Appellant Jeff Hawkins (Hawkins) appeals from his conviction of mayhem, attempted murder and aggravated assault. He argues that the trial court erred in refusing to instruct the jury on imperfect self-defense based on delusion or on voluntary intoxication, and erred in giving an instruction on flight. He also maintains that no substantial evidence supports the jury's finding that he was sane at the time he committed the crimes. We affirm.

### II.

### PROCEDURAL BACKGROUND

The Alameda County District Attorney charged Hawkins by information with aggravated mayhem (Pen. Code, § 205[1]), attempted murder (§§ 664, 187, subd. (a)), and assault with a deadly weapon (§ 245, subd. (a)(1)). The information also alleged use of a

---

[1]     Unless otherwise noted, all further statutory references are to the Penal Code.

ADDENDUM   A

Court of Appeal, First Appellate District, Div. 4 - No. A113249
**S149518**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

JEFF HAWKINS, Defendant and Appellant.

The petition for review is DENIED.

SUPREME COURT
**F I L E D**

MAR 2 1 2007

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE

Chief Justice

EXHIBIT B

---

Alameda County Public Defender
Lakeside Drive, Suite 400
Oakland, California 94612-4305
          (510) 272-6600          case no. C-148332

(Page. 3 of 6).
Attorney at Law, Gregory Syren



John Steinberg, Attorney at Law
P.O. Box 8148, Berkeley, California.
                94707-8051
                (510) 559-8051    case no. A113249

(Page. 7 ).
 Appellant, Counsel.

(2)

23

# Alameda County Public Defender

*   **457**

Lakeside Plaza Office
1401 Lakeside Drive, Suite 400
Oakland, CA 94612-4305
(510) 272-6600



Diane A. Bellas
Public Defender
Harold G. Friedman
Chief Assistant

1/11/06
File No. O04-05188

Karen Lee
Deputy Probation Officer
400 Broadway
Oakland, CA 94607
QIC: 22801; Phone Number: 268-7011

> **RE:**        **Jeff Hawkins**
> **PFN:**        **AQE810**
> **Docket No.**  **148332**
> **R&S Date:**   **Feb. 6, 2006, Dept. No. 8, at** 9:30 am

Dear Ms. Lee :

I am writing on behalf of my client Mr. Jeff Hawkins. Following a lengthy jury trial, Mr. Hawkins was found guilty by a jury of the following offenses: Penal Code Section 203 (mayhem), Penal Code Section 664/187 (attempted murder) with additional clauses under Penal Code Section 12022(b)(1)-use of a deadly weapon and 12022.7(b)-great bodily injury, brain, and Penal Code Section 245(a)(1) (assault with a deadly weapon) with the above appendant clauses. Following the jury trial, a court trial was held on Mr Hawkins' prior felony convictions. The court found true the six prior convictions alleged in the information. Of those prior convictions, only the first and second priors were enhancing. Mr. Hawkins' conviction for Penal Code Section 211 in 2003 is both a serious felony pursuant to 667(a)(1) PC and a strike pursuant to 1170.12(c)(1) and 667(e)(1) PC. The second prior conviction, Health and Safety Code Section 11351.5 from 2000 is a prison prior pursuant to Penal Code Section 667.5(b).

Following the jury trial on the guilty phase of Mr. Hawkins' case, the jury was then asked to determine whether Mr. Hawkins' was legally sane or insane at the time of the commission of the offense. Despite the testimony of two experts appointed by the Court who had rendered an opinion that Mr. Hawkins was legally insane during the commission of the offense, the jury made its finding that Mr Hawkins did not meet the criteria for legal insanity.

As a result, I would calculate Mr Hawkins exposure as the following: Mayhem is punishable by two, four or eight years; Attempted Murder is punishable by five, seven or nine years with an additional one year for use of a deadly weapon and an additional five years for the great bodily injury clause; assault with a deadly weapon is punishable by two, three or four years with either an additional one year for use

3

of deadly weapon or an additional five years for the great bodily injury clause. The "strike" prior (1170.12(c)(1) effectively doubles the state prison sentence for the prison term for the substantive offense. The "serious felony" nature of the prior conviction (Penal Code Section 667(a)(1)) adds an additional five years in state prison to the aggregate sentence.

458

As a result of all of these criterion, Mr. Hawkins is looking at a maximum sentence of 30 years on the attempted murder count alone. This is calculated as: 9X2=18+1+5(deadly weapon and GBI)+5(serious felony prior)+1(prison prior). There is a legal question about whether Mr. Hawkins could be punished additionally for mayhem offense (this would add an additional 1 and 1/3X2=2 and 2/3 years to that maximum sentence). It is clear, however, that the 245(a)(1) offense is duplicative of the attempted murder offense and would add no additional time to his exposure.

Alternatively, the minimum sentence which Mr. Hawkins faces is: 2X2=4+1+5=10 years state prison. This minimum sentence is arrived at by taking the low-term on the assault with a deadly weapon, doubling that sentence; electing to add one-year on the use of deadly weapon and adding the additional 5 years for the serious felony prior. This calculation would presume that the Court elected to sentence on the lesser (245(a)(1)) and stay on the greater (664/187 and 203) as well as striking or staying the prison prior.

The facts of this case were largely without great dispute. In April of 2004, Mr. Hawkins had been living in transitional housing through the Options Recovery Services drug program in Berkeley. A couple of days before this incident, he had been asked to leave the program because of his bizarre behavior and threats against his roommate in the program. Mr. Hawkins ended up staying at the home of his childhood friend Lamar Brooks. Mr. Brooks had possession of a house belonging to his aunt in which several men rented rooms and space. Mr. Hawkins had been staying on the couch in the residence for only a couple of days before the assault occurred. According to witnesses at the house, Mr. Hawkins's behavior had become more and more bizarre in the days leading up to and including the day of the assault.     Mr. Brooks described occasions where Mr. Hawkins appeared to be talking to the sky and asking whether Mr. Brooks had heard things. On the evening of the assault, Mr. Hawkins had taken a gallon of turpentine which was laying around the house and poured much of the gallon all over the carpeting in the livingroom in order to "make the house smell better." This caused all the members of the house to have to evacuate to air the house out.

The victim in this case, King Ninety, was one of the renters in the house. Though he was aware of Mr. Hawkins' presence in the house, he did not really interact with Mr. Hawkins and barely knew him. According to Mr. Ninety as well as the others in the house, he had never had any trouble with Mr. Hawkins before–never even any harsh words. According to one witness, the last time he saw Mr. Ninety before he was assaulted was in his bedroom with Mr. Hawkins and another renter in the house watching television.

Sometime during the very early hours of April 18, 2004 (5:00 am to 6:00 am) Mr. Ninety was struck several times on his head with what appeared to be a baseball bat while he was sleeping. Mr. Hawkins was seen by at least two people in the house holding a portion of the broken baseball bat outside the room of Mr. Ninety. According to Mr. Brooks, when asked why he had struck Mr. Ninety, Mr. Hawkins said that Ninety was responsible for shooting him ten years earlier. Mr. Hawkins seemed calm and had a strange look in his eyes, according to Mr. Brooks. Mr. Brooks steered Mr. Hawkins out of the house and away from the house.

4

25          Mr. Hawkins was arrested approximately 6 hours after the assault. He was still wearing the same clothes he had on during the assault. He was arrested when several people from the neighborhood took matters in their own hands and were assaulting Mr. Hawkins on the street when the police arrived. Mr. Hawkins stripped naked when the police were trying to detain him. He was eventually arrested without incident and taken to the police station. He gave a statement to the police basically denying that he had assaulted Mr. Ninety and knowing any of the people in the house.                    459

          Mr Ninety suffered massive injuries as a result of the assault. He was initially in a complete coma for a couple of days then hospitalized for the next month or two. He lost most of his vision in his left eye. He completely lost his sense of smell. Virtually every bone in his face was broken. The surgery and scaring he suffered to his face essentially changed his looks. He continues to have severe headaches and is subject to seizures.

          In May of 2005, Mr. Hawkins entered a new and additional plea of not guilty by reason of insanity. During the preparation of his case, it had been determined that Mr. Hawkins had suffered from a diagnosed condition of paranoid schizophrenia since at least 1994. He had been hospitalized numerous times at John George, Herrick Hospital, etc. He had been receiving psychiatric medications, most zyrexa, for his schizophrenia for several years. One of the recurrent themes of his schizophrenia was his belief that people he came into contact with were responsible for shooting him in the head. In fact, Mr. Hawkins had been shot in 1994. That shooting incident, however, involved a single shot to his arm and a slight graze wound to his head. It appears from the records that Mr. Hawkins first placement in John George occurred the same year he was shot.

          Mr. Hawkins was interviewed by two court appointed psychologists in May and June of 2005 as a result of his plea of not guilty by reason of insanity. I have attached both of those evaluations to this letter for your benefit and for the benefit of the probation report. The reports basically speak for themselves. Both Dr. Griffith and Dr. Hoey found the Mr. Hawkins met the legal criterion for being insane. They also rendered a diagnosis of paranoid schizophrenia and suggested that they believed that Mr. Hawkins was in the midst of an acute delusion during the assault in this case.

          The jury's finding of Mr. Hawkins' sanity was a bit of a mystery. Without the benefit of any expert testimony from the People, Ms. Kobal focused on the severity of the this assault, the fact that Mr. Hawkins' statement seemed to imply that the assault was motivated by revenge and Mr. Hawkins's statement to police of denial as evidence that he must have been aware that what he was doing was wrong. Both of the psychologists considered all of these factors and still opined that Mr. Hawkins was legally insane at the time of the assault. I continue to hold onto the belief that Mr. Hawkins was, in fact, insane at the time of this assault. His belief that Mr. Ninety was responsible for shooting him was a complete delusion and part of Mr. Hawkins' disordered thinking. Every aspect of this assault, from his deluded belief regarding Mr. Ninety to his alleged need to take revenge was part of a long history of Mr. Hawkins' schizophrenia.

          I continue to believe that Mr. Hawkins needs to be in a structured setting to continue treating his schizophrenia. I have reservations that the Department of Corrections will diligently treat his condition.

///
///
///

5

The circumstances in mitigation are as follows:                                    460

- Rule of Court 4.423(a)(3)    The crime was committed because of unusual circumstances unlikely to reoccur, in that it is difficult to conceive of a situation in which this same cast of characters would convene in the same location coupled with the same level of delusional thinking on the part of Mr. Hawkins.

- Rule of Court 4.423(b)(2)    Mr. Hawkins suffers from a mental or physical condition which reduces significantly culpability for the crime in that in ten year long battle with paranoid schizophrenia came to an unfortunate and very violent head on the morning of the assault.  The supporting documents for that schizophrenia are attached to this letter.

- Rule of Court 4.423(b)(6)    Mr. Hawkins has performed satisfactorily in the past on probation or parole.

Mr. Hawkins' case is one which I became familiar with from its inception. I was assigned Mr. Hawkins' case shortly after his arraignment. I was struck by his seemingly gentle manner and politeness when he communicated with me, juxtaposed with the utterly violent act which he was accused of. I recall him describing facts and circumstances to me about his case with unbridled sincerity--facts which later turned out to be products of his delusional schizophrenic thinking. To this day--and despite the finding of the jury-I honestly believe that Mr. Hawkins was so completely in the throws of a paranoid delusion that he had little or no idea what he was doing. A ten year history of paranoid schizophrenia which included multiple hospitalizations, a constant battery of anti-psychotic medications and regular treatment was apparently not sufficient help to prevent this incident. Though the jury was not convinced by the evidence produced of Mr. Hawkins' insanity at the time of the commission of this offense, there is no doubt in anyone's mind that Mr. Hawkins' mental illness played the biggest role in this offense. My concern for Mr. Hawkins is not that he will be in a confined setting for years to come, but that he was not be treated in a meaningful way for his obvious mental disease. For this reason I am attaching as much relevant information about Mr. Hawkins's diagnosis, treatment and evaluations regarding this case. I sincerely hope that the Department of Corrections will take this information into account when deciding where to place Mr. Hawkins and how much treatment he will receive in that placement.

If you have any questions regarding this case, please do not hesitate to contact me at 272-6640, x26640.

Sincerely,

ALAMEDA COUNTY PUBLIC DEFENDER

Gregory Syren
Attorney at Law

6

# JOHN STEINBERG

**Attorney at Law**

P.O. Box 8148, Berkeley, CA. 94707-8148
telephone/fax (510) 559-8051

_____

## CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION

_____

• March 23, 2007

Jeff Hawkins F18885
P.O. Box 7500
Crescent City, CA 95532
Legal mail

Dear Mr. Hawkins,

Enclosed is a copy of the order of the California Supreme Court denying the petition for review. My appointment to represent you expires with this order. I have sent the entire record of your trial to you. I have also enclosed a form for filing a petition for writ of habeas corpus in federal court if you wish to continue to challenge your conviction. The petition must be filed within one year of the date of the denial of the petition for review. After exhausting your remedies under state law, if you wish to file a petition for writ of habeas corpus in federal district court, you must do so within one year of the denial of the petition for review by the California Supreme Court. (28 U.S.C. sec. 2244.)

I have sent you the entire record in your case, including all of your correspondence to me, and everything that was filed in the Court of Appeal. You have already received all of the briefs and you have all of my correspondence to you. **Since I no longer retain any records of your appeal, it is important for you to keep all of these documents if you wish to pursue any further legal challenges to your conviction.**

Very truly yours,

John Steinberg
John Steinberg

Exibits C

Alta Bates Medical Center
Psychiatric Admission Discharge Summary
( 6 Pages.)

Alta Bates Hospital Emergency Department
Records,
        Lonny Shavelson, M.D.
    Medical Records,647361
Dated, November 26,2001.
Private MD; Berkeley Mental Health
( Pages, 1 and 2.)

Griffith S. Marlin, PH. D.
Clinical and Forensic Psychology
California Licence Phy 5355
1305 Franklin Street, Suite 509
Oakland, California.
                    94612.
  (510) 278-5324.
            ( 5 Pages.)

Hoey Henry P. PH. D.
Clinical and Consulting Psychology
Avalon Valley Clinic
1618 Holmes Street
Building, C                 case no. 148332.
Livermore, California.
                    94550
            ( 8 Pages.)

3

**ORIGINAL**

**DATE OF ADMISSION:**  07/20/02

555

**DATE OF DISCHARGE:**  07/26/02

Mr. Hawkins was sent to Alta Bates Medical Center on a 5150 as a result of his being found to be psychotic and a danger to himself and to others. Apparently the patient had stopped his medications and begun using cocaine once again.

**HISTORY OF PRESENT ILLNESS:**  The patient has a long history of psychiatric hospitalizations and a long history of symptoms of severe schizophrenia including paranoia, auditory and visual hallucinations.  He has a very long history of cocaine use and crack cocaine use on a chronic basis.

**PAST MEDICAL HISTORY:**  The patient has a history of head trauma and a series of CT scans but they apparently have always been normal according to the record.

**COURSE IN HOSPITAL:**  The patient was admitted on a Saturday and on the first day did not receive any antipsychotic medications but on the second day Zyprexa 10 mg per day was started.  I then saw him for the first time on the following day, July 22nd.  I found the patient to be extremely guarded and untrusting and evasive and there was clear paranoid ideation. I asked the patient to sign in voluntary which he reluctantly did do and I increased his Zyprexa 20 mg per day.  He was kept on the dual diagnosis unit for simultaneous treatment of his paranoia and his cocaine withdrawal.  He was placed on a withdrawal program, appropriate laboratory studies ordered, and his major p.r.n. was Ativan 1 to 2 mg p.o.q. 4 hours p.r.n. withdrawal symptoms such as anxiety, restlessness, etc., for a period not to exceed 72 hours.

The patient actually did reasonably well and once the Zyprexa began to take effect he made a rapid improvement and had no difficulties with his withdrawal from cocaine.  He was improved enough by 07/26 to be able to be discharged.  I discharged him home with a 30 day supply of Zyprexa 10 mg b.i.d.  Social Worker has arranged follow-up; however, it should be noted that the patient has a very long history of not doing his follow-up appointments consistently and eventually stopping his medications once again.

Medically the patient had a physical examination.  He has a history of gastritis and gunshot wounds on two separate occasions.  As mentioned before, he has had a number of negative CAT scans.  He also has a history

*Alta Bates*

MEDICAL  CENTER

**PSYCHIATRIC ADMISSION & DISCHARGE SUMMARY**

**Name:**   HAWKINS, JEFF

**MR:**   647361

**Physician:** JASON KIRKPATRICK, M.D.

7/24

1

**ORIGINAL**

**Page: 2**                                                                          556

of eczema.

Routine laboratory exams were done and hematology profile revealed a very
slight reduction in his red cell count, hemoglobin and hematocrit but
these were extremely borderline. Urinalysis was within normal limits.
Chemistry was within normal limits except for slightly reduced albumin
level. Urine drug screen was positive for benzodiazepines and cocaine.

**ADMISSION DIAGNOSIS:**
Axis I.    Chronic paranoid schizophrenia versus schizoaffective disorder.
           Cocaine dependence.
Axis II.   Deferred.
Axis III.  History of gastritis.
           Head injury.
           Gunshot wounds.
Axis IV.   Unclear.
Axis V.    GAF 15.

**DISCHARGE DIAGNOSES:**
Axis I.    Schizophrenia, paranoid with chronic exacerbation.  295.34.
           Cocaine dependence.  304.80.
Axis II.   No diagnosis.
Axis III.  History of gunshot wounds, head injuries and gastritis.
Axis IV.   No acute stressors.
Axis V.    Discharge GAF 55.

**CONDITION ON DISCHARGE:**  The patient was much improved; however, the
prognosis is very guarded due to his frequent relapse history and
inconsistent taking of medications.

_____
Jason Kirkpatrick, M.D.

JK/TL 805 #48628        DD 08/07/02  DT:08/07/02   3:04 pm

---

*Alta Bates*

M E D I C A L   C E N T E R

**PSYCHIATRIC ADMISSION & DISCHARGE SUMMARY**

**Name:**   HAWKINS, JEFF

**MR:**   647361

**Physician:**  JASON KIRKPATRICK, M.D.

Addendum C

**ORIGINAL**

**DATE OF ADMISSION:** 07/21/02

557

**PATIENT LOCATION:** Patient is admitted to 4 North.

**IDENTIFICATION:** This is a 34-year-old African/American male with psychosis here on a 5150 as danger to self and danger to others.

**CHIEF COMPLAINT:** Per the patient is "stress" accompanied by auditory and visual hallucinations and paranoia. Of note, the patient was very somnolent and poorly organized during the interview, as a result, he is a very poor historian. Old discharge notes and summaries along with the admission information are used heavily to compose this History and Physical Examination. I would suggest referring to the old discharge summaries for additional details. The patient's urine drug screen on admission was positive for marijuana and cocaine.

**HISTORY OF PRESENT ILLNESS:** The patient has had psychiatric symptoms and particularly these at times have been very severe with severe paranoia and auditory and visual hallucinations. The patient has had cocaine use; has been on crack cocaine in the past. He has had multiple episodes of unconsciousness, head trauma, but his CT scans have been normal. He has history of psychotic symptoms. Based on the records, it does not appear that the patient has filled his Zyprexa prescription for approximately the last two months. The patient recently used crack cocaine and as a result has had a severe episode of paranoia. After the last use, he went up in his neighbor's backyard, rolling on the ground and screaming. He recently dropped out of a drug rehabilitation program in Fremont. He indicated that in spite of all his psychiatric history, the patient has been hospitalized here most recently on 12/1 to 12/4 under Craig Fischer, M.D.'s care. In the past he has been treated with Prolixin and Tegretol. This was when he was in prison. He developed some tardive dyskinesia at that time and it appears that he was released from prison on October 18 of last year. He had previous hospitalizations at John George Pavilion in 1996, Herrick Hospital in February of 1999, history of crack dependence, and crack dealing. There are also indications in the past of severely depressed mood accompanied by suicidal and homicidal ideation in the past although they do not seem to be a part of his presentation.

**PAST MEDICAL HISTORY:** Remarkable for gastritis, gunshot wounds times two, and loss of consciousness several times with normal CT.

**SOCIAL HISTORY:** The patient is born and raised in Oakland and has no childhood trauma history that he is willing to reveal. He has one brother and four half siblings. He dropped out of high school in the eleventh grade and worked in construction briefly, but mostly has been on Social Security Disability along with income derived from selling drugs. He is currently single, having divorced a few years ago. He indicates that he has a history of mental health problems in the family but is unwilling to

*Alta Bates*

MEDICAL CENTER

**PSYCHIATRIC ADMISSION**

**Name:** HAWKINS, JEFF

**MR:** 647361    RM: 4206

**Physician:** JAMES B. PAGE, M.D.

3

Addendum C

ORIGINAL

**Page: 2**

558

further elaborate.

**ALLERGIES:** He denies having any drug allergies.

**MENTAL STATUS EXAMINATION:** The patient is very somnolent, fell asleep
several times during the interview. Overall he was quite cooperative and
quite guarded. His speech was impoverished of content, otherwise had
normal rate. Affect was quite restricted. He had abnormal movements. He
was lying in bed, under his covers in hospital garb. His personal
appearance is somewhat unkempt. Thought process is somewhat
circumstantial but for the most part, he was able to answer some of the
questions. His mood he described as stressed. He denied any current
suicidal or homicidal ideation but was somewhat paranoid. He indicated
that he had auditory hallucinations and that he had visual hallucinations
within the last 24 hours. His insight and judgment were very poor in his
perception of cocaine abuse.

**IMPRESSION:** A 34-year-old African/American man with acute exacerbation
of psychosis, apparently induced by medication noncompliance along with substance
use. The overall role of cocaine, head injuries versus biological factors
in his psychosis is uncertain. He has a history of depressed mood raising
the possibility of schizoaffective disorder and he has been treated with
mood stabilizers in the past.

At this time we will restart his Zyprexa initially at 10 mg since he has
been off of it for a couple of months with a target of 20 to 30 mg. I
would consider a mood stabilizer, longer term.

**DIAGNOSES:**
AXIS I:    Chronic paranoid schizophrenia versus schizoaffective disorder.
           Patient also has history cocaine dependence.
AXIS II:   Deferred.
AXIS III:  History of gastritis, head injuries, and gunshot wounds.
AXIS IV:   Unclear.
AXIS V:    15.

**PLAN:**
1.   Admit to stabilize and assess.
2.   Restart Zyprexa 10 mg p.o. q.h.s.
3.   Consider mood stabilizer.
4.   Stimulant withdrawal protocol.
5.   Integrate into milieu and groups.
6.   Assess suitability for drug rehabilitation.

---

_Alta Bates_

M E D I C A L   C E N T E R

**PSYCHIATRIC ADMISSION**

**Name:**   HAWKINS, JEFF

**MR:**   647361    **RM:** 4206

**Physician:** JAMES B. PAGE, M.D.

4

**Page: 3**

559

7.  Discharge planning.
8.  Estimated length of stay is three to five days.

_____
James B. Page, M.D.

JB/TL 548 #43201        DD 07/21/02  DT:07/21/02   1:50 pm

---

*Alta Bates*

MEDICAL CENTER

**PSYCHIATRIC ADMISSION**

**Name:**    HAWKINS, JEFF

**MR:**    647361    RM: 4206

**Physician:** JAMES B. PAGE, M.D.

Addendum C

**COPY**

DATE OF CONSULTATION:     /   /                              560

HISTORY: Jeff Hawkins has been admitted to Herrick Hospital with a history of psychiatric disorder and substance abuse. He is currently on the dual diagnosis unit. The patient was very sleepy at the time of my examination. When awakened, he became angry and stated that he would only allow limited examination. He denies any history of any past medical problems. He denies any history of any surgery. He states that he has had some problems with athlete's foot but no other current problems. The patient's old chart could not be located and I was unable to review it for additional information.

PHYSICAL EXAMINATION:
VITAL SIGNS: He is afebrile. Blood pressure is 140/70. Pulse 70.
GENERAL: The patient was a sleepy male. As noted, he would only allow limited examination.
HEAD: He does not appear to have any evidence of trauma.
NECK: Thyroid not enlarged or nodular.
LUNGS: Clear.
HEART: Normal PMI without any gallops or murmurs.
ABDOMEN: No organomegaly or tenderness.
NEUROLOGICAL: The patient did not appear to have any focal deficits. As noted, the examination was very limited.

ASSESSMENT: Tinea infection of feet.

PLAN: The patient will be given Lamisil cream for treatment of his condition. He should have screening laboratory tests.

*E. Mc Millan*
Eugene McMillan, M.D.

EM/TL 503 #44022        DD 07/23/02  DT:07/25/02    5:42 pm

---

*Alta Bates*

M E D I C A L   C E N T E R
**CONSULTATION**

**Name:**   HAWKINS, JEFF

**MR:**   647361   **RM:**

**Physician:** EUGENE MCMILLAN, M.D.

6

Hawkins, Jeff   11/26/01 

611

### Alta Bates Hospital
### Emergency Department Record
### LONNY SHAVELSON, M.D.

November 26, 2001
# of pages: 2
Patient's Name:  Hawkins, Jeff
Medical Record #:  647361
Private MD: Berkeley Mental Health
Time chart initiated: 12:45 AM 11/27/01
Admitting Vital Signs:
Temp: 95.7
BP: 155/85
P: 87
R: 16

CHIEF COMPLAINT: "I want to be in the hospital."

HISTORY OF PRESENT ILLNESS: This 34 yo M states he has a history of paranoid schizophrenia.  He was released from jail 10/18, where he'd been on Zyprexa, which he says works well for him.  He's been followed by Berkeley Mental Health in the past.  He ran out of meds about 2 wks. ago, and has noted increased voices, "feeling really anxious."  He has not gone back to Berkeley Mental Health.  He uses crack cocaine about once every "few days," last use 2 days ago.  Denies other drug use.  He denies any thoughts of suicide or harming anyone else.  He has no weapons.  He denies prior history of suicide attempts or of hurting others.  He states he's living on the streets now, and that he needs to be in the hospital.  He agrees that tonight is no different than many prior nights, and that when he's on medications he feels much better and functions much better.

MEDICATIONS:  Zyprexa 20mg QD, none X 2 wks.
ALLERGIES: None

PAST MEDICAL HISTORY: Eczema.  Paranoid schizophrenia.

REVIEW OF SYSTEMS, before the onset of this presenting problem is negative for recent weight change, heat or cold intolerance, fever, chills, sweats, headache, visual change, hearing change, sore throat, increased thirst, shortness of breath,  cough, wheezing, chest pains, palpitations, nausea, vomiting, changed bowel movements, melena, dysuria or polyuria, swelling or pain of extremities or joints, rash, focal neurologic symptoms, seizures, dizziness, easy bruising or prolonged bleeding.

FAMILY HISTORY: Not obtained.

SOCIAL HISTORY AND HABITS: Crack cocaine as noted above.

PHYSICAL EXAM:
GENERAL: No acute distress, Alert, oriented X 3.  Cooperative.
HEENT: Atraumatic. Sclerae white, conjunctivae pink, mouth moist.  Oropharynx wnl.

ADDENDUM   C



612

Nodes wnl.  Thyroid wnl.  Neck supple and not tender.  No jugular venous distension noted.

CHEST: Breathing comfortably at rest.  Clear to percussion and auscultation

COR: Without murmur, rub, gallop.

ABDOMEN: Soft.  Liver, spleen, kidneys not palpable.  No mass palpable.  No tenderness.  Bowel sounds wnl.

EXTREMITIES: Without clubbing, cyanosis, edema.  No joint swelling noted.

SKIN: Warm, dry.  Without rash, petechiae, ecchymoses.

NEURO: Without focal abnormality by observation.


COURSE AND TREATMENT: Patient was given 20mg of p.o. Zyprexa in ER.

IMPRESSION: Exacerbation of chronic psychosis due to cessation of anti-psychotic meds.  I see no need for emergent hospitalization at this time, but he is instructed to return if the medications are not helping.

WORKING DIAGNOSIS: Paranoid schizophrenia.

RN DISCHARGE INSTRUCTIONS: Zyprexa 20mg p.o. X 1 now, and Rx. for #30.

PATIENT DISCHARGE INSTRUCTIONS:  Take zyprexa once daily.  Go to Berkeley Mental Health in the morning and re-establish care there.  Return to emergency if you are getting worse or develop any new symptoms.


LONNY SHAVELSON, M.D.

8

461

# MARLIN S. GRIFFITH, PH.D.
*Clinical and Forensic Psychology*
*California License PSY 5355*

1305 Franklin Street, Suite 509 • Oakland, CA 94612          Phone: (510) 287-5324

June 24, 2005

Honorable Thomas Reardon
Superior Court of California
Department 11
Rene C. Davidson Courthouse
Oakland, CA 94612

Re:    Jeff Hawkins
       PFN: AQE810
       Case No. 148332

Subject: Determination of Criminal Responsibility under Sections 25/1027 of the
California Penal Code. Section 25 PC establishes that an individual is not criminally
responsible if, by reason of mental disease or defect, the individual lacked substantial
capacity to appreciate the wrongfulness of his/her conduct, or lacked substantial capacity
to conform his/her behavior to the requirements of the law.

Dear Judge Reardon:

I examined Jeff Hawkins on June 24, 2005 pursuant to Sections 1027/25 of the Penal
Code. The examination took place in the medical clinic at the Santa Rita Jail. Mr.
Hawkins was informed that I would be conducting a court ordered psychiatric evaluation
directed toward his mental status at the time of the offenses to which he is charged and
that there were limitations to the confidentiality of the information obtained. He
acknowledged that he understood the confidentiality limitations and consented to the
interview. In reaching an opinion on Mr. Hawkins' mental state, I relied upon my
clinical interview and review of the following documents and records:

1. Attorney letter from DPD Gregory Syren summarizing defendant's charges and
   his concerns regarding defendant's mental status.
2. Portions of Oakland Police Department Investigative Report,
   RD No. 04-35428, 04/18/04.
3. Portions of the preliminary hearing, 9/14/04.
4. Alta Bates Hospital – Psychiatric Records, February 1999, December 2001, July
   2002.
5. Medical records maintained by the C.J. Mental Health Program at Santa Rita.

9)

.35

Honorable Thomas Reardon
Re: Jeff Hawkins
Page 2

462

Facts Regarding the Instant Offense That Were Relied Upon:

Mr. Hawkins is charged with aggravated mayhem (Sec. 205 PC), attempted murder with great bodily injury (Sec. 187(a) U&G PC), and assault with a deadly weapon (Sec. 245(a)(1) PC). The charges arise from an incident on April 18, 2004 in which he is accused of assaulting a man named King Ninety with a baseball bat as he was sleeping.

Review of Medical Records:

Psychiatric admission to Alta Bates Hospital – 2/14/99 to 2/19/99: Patient was seen in the emergency room with complaints of anxiety and feeling out of control. Evaluation revealed that he was also hallucinating voices that were telling him he was being threatened and he should harm others. Patient was diagnosed as Paranoid Schizophrenic, chronic with acute exacerbation. Patient was also diagnosed as Cocaine Dependent and Abuse. He was treated with antipsychotic medication and psychotherapy and discharged to outpatient follow-up.

Psychiatric admission to Alta Bates Hospital – 12/01/01 to 12/04/01: Patient was seen in the emergency room with a variety of complaints and admitted on a 72-hour hold. He complained of banging his head on a wall due to auditory hallucinations, paranoid feelings, and thoughts of killing himself. He was recently discharged from prison on antipsychotic medications but had not been taking them. He also had recently used cocaine. Patient was diagnosed as Paranoid Schizophrenic, chronic with acute exacerbation and Cocaine abuse. He was treated with antipsychotic medication and psychotherapy and discharged with recommendation of entering a structured residential program.

Psychiatric admission to Alta Bates Hospital – 7/20/02 to 7/26/02: Patient was seen in the emergency room and admitted on a 72-hour hold due to complaints of auditory hallucinations and paranoia. He reported recent use of crack cocaine and having not taken his medication consistently. Patient was diagnosed as Paranoid Schizophrenic, chronic and treated with antipsychotic medication and psychotherapy.

Medical records at CJMHP – October 1998 to May 2005: Patient has had 14 contacts with the Alameda County Mental Health system since July 1996. He was diagnosed with Paranoid Schizophrenia and Cocaine Dependence and was consistently prescribed antipsychotic medication. His symptoms have consistently included auditory hallucinations and paranoid thoughts and feelings. Voices off and on told him to harm himself and/or others. Patient does well when taking his medication and was reported stabilized on Zyprexa as of 5/5/05.

10

463

### Social History:

Mr. Hawkins was born on 10/26/65 in Oakland, California. He dropped out of school in the eleventh grade and worked for a period in construction. He has multiple arrests for drug charges and has served time in prison. He is divorced and has a daughter 12 years of age. He does not have contact with family members.

Mr. Hawkins' psychiatric history dates to 1996 with an admission to the John George Psychiatric Pavilion. Subsequent admissions to Alta Bates Hospital occurred between 1999 and 2002. His diagnoses have been consistently Paranoid Schizophrenia and Cocaine Abuse/Dependence. He has also received treatment in several substance abuse rehabilitation and transitional mental health programs. His last admission was to the Options program in Berkeley from December 2003 to April 2004. He left as a result of an altercation with another resident shortly before the current incident. He receives SSI due to his psychiatric illness.

### Defendant's Statement of the Offense:

Mr. Hawkins stated that he does not have memory of the incident of April 18, 2004. He felt that he was in a "transition or blackout state" at that time and things were not that clear. He acknowledged that the incident occurred in April 2004 shortly after he left the Options program and stated that he has been charged with assault with a deadly weapon and mayhem. However, he is not certain that it was he or that he had been "set up." He stated that he felt good about the Options program and had been taking his Zyprexa medication when he left. He stated at the time that he did not know the victim and had only seen him around. He also recalled feeling withdrawn into himself and not wanting to be around people. He denied using any drugs and believes that his drug tests prior to and after the incident were clean.

### Current Mental Status Examination:

Mr. Hawkins is a 38 year-old, tall, heavy built African-American male who presented without apparent physical deficits. He was dressed appropriately in the county jail uniform and revealed good personal care. No unusual mannerisms were evident and his psychomotor activity was normal. Mr. Hawkins was cooperative with the evaluation and interacted in a friendly manner. His speech was clear and well modulated and the flow of his thoughts was for the most part normal. He was distracted by the activity outside of the exam room and his behavior as well as the content of thoughts revealed marked paranoid suspicion. There were no overt distortions in perception but he acknowledged having recent auditory, visual, and olfactory hallucinations.

Mr. Hawkins stated that he hears voices daily but that the medication helps to calm him. The voices tell him that persons around him were the ones who shot him and this fuels his paranoid thoughts and feelings. When he feels this way, he stated that he seeks

Honorable Thomas Reardon
Re: Jeff Hawkins
Page 4

psychiatric help and has never hurt anyone. He also stated that he has visual experiences
of people disappearing and reappearing as if they walked through the walls. He
expressed the belief that his cellmate can get in and out of the cell in this strange way.
Earlier this week he stated that something in the air flowed into his nose and clouded his
thoughts. As a result, he had trouble focusing on the game of chest he was playing with
his cellmate. He described this experience as an unusual smell.

Mr. Hawkins' mood was friendly and euthymic but interspersed with moments of
paranoid suspicions. His affect was spontaneous and revealed a range of appropriate
expressions. There was no indication of anxiety or depression.

Mr. Hawkins was fully oriented and his concentration and memory functions were intact.
However, he has gaps in memory around the time of his paranoid episodes and drug use.
He has fair insight into his mental illness but never-the-less views the world through a
paranoid lens.

Diagnostic Impressions: Mr. Hawkins presents with Paranoid Schizophrenia, chronic,
but is relatively stabilized on antipsychotic medication. He has persistent symptoms of
auditory hallucinations and paranoid thoughts and feelings. He also has a history of
Cocaine Dependence that is in full remission due to his controlled environment. He has a
level of insight regarding his mental illness and understands that his medication markedly
reduces the hallucinations and paranoia.

Conclusion and Opinion:

Mr. Hawkins has a history of a mental disorder with diagnoses of chronic Paranoid
Schizophrenia and Cocaine Dependence. His psychotic disorder dates to about 1996
when he had his first hospitalization. Three additional hospitalizations followed up to
2002. His schizophrenia manifests in auditory hallucinations and paranoid thoughts and
feelings. Voices tell him to harm himself or others but for the most part he has been able
to control acting upon these experiences.

Witnesses testified at the preliminary hearing that Mr. Hawkins' behavior was weird
beginning about one week prior to the incident. Witnesses reported that he did a lot of
pacing and talking to himself and made statements that suggested he was responding to
auditory hallucinations.

Witnesses also testified that Mr. Hawkins' engaged in strange behavior at the time of the
incident. He poured turpentine around the living room floor and stated that he was
disinfecting the house. He was also pacing and talking to himself and accused the victim
of being the one who shot him ten years ago.

Mr. Hawkins' mental status is marginal at the present but I find him to be mentally
competent to stand trial. He is on appropriate medication for his condition and according
to medical records is compliant with treatment. He has present ability to make decisions

ADDENDUM C

Honorable Thomas Reardon
Re: Jeff Hawkins
Page 5

465

about his medication. Antipsychotic medication markedly reduces but does not completely control his psychotic process of auditory hallucinations and paranoia. If he continues his compliance and maintains contact with a structured treatment program, it is my opinion that he is not a danger to self or others.

Based on my evaluation of Jeff Hawkins, it is my opinion that he was severely mentally disordered at the time of the offense on April 18, 2004 and lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his behavior to the requirements of the law.

Thank you for your referral of Mr. Hawkins for evaluation. If I can be of further assistance, please give me a call.

*Marlin S. Griffith, PhD*
Marlin S. Griffith, PhD

ADDENDUM   C

467

# Henry P. Hoey, Ph.D.
### Clinical & Consulting Psychology
### Avalon Valley Clinic

| | |
|---|---|
| 1618 Holmes Street, | Telephone: (925) 449-8591 |
| Building C | (800) 826-9833 |
| Livermore, CA 94550 | FAX: (925) 449-8838 |

**CONFIDENTIAL**                                              June 13, 2005

Honorable Thomas Reardon
California Superior Court Judge
County of Alameda
Rene C. Davidson Courthouse
Criminal Division
Department # 011 ds
1225 Fallon Street
Oakland, CA 94612


RE:          THE PEOPLE VS:
             **Jeff Hawkins**
             Case No: 148332
             PFN: AQE810
             CEN: 4248034
             DOB: 12/17/1966

Charge(s): 205 PC, A187 (AU&GPC) 245(A) GBI.

Your Honor:

Following your order to conduct a not guilty insanity plea evaluation of the
defendant, Jeff Hawkins, I evaluated this individual on the morning of June
2, 2005 at Santa Rita Jail Medical Clinic. He was informed that his
evaluation was not confidential and a report would be sent to Your Honor.
He agreed to cooperate with his examination.  As part of my evaluation I
read and reviewed the following documents: Alameda County Department
of Behavior Health Care record of 11/03/99, Alta Bates Medical Center
psychiatric records of 02/15/1999, 02/19/99, 12/01/01, 12/04/01, 01/25/02,
07/20/02, 07/26/02, and the Santa Rita Jail mental health records of
04/20/04, 04/23/04.   I also read and reviewed the following documents:
Oakland Police Department follow-up investigation report (RD number 04-

CONFIDENTIAL                                    June 13, 2005
Report to Honorable Thomas Reardon              Page Two
RE: Jeff Hawkins

35428), reported transcript of proceedings of the defendant's preliminary
hearing of September 14, 2004 and Mr. Gregory A. Syren, letter of June 6,
2005.

## DEFENDANT'S PRESENTING APPEARANCE, BEHAVIOR AND MENTAL STATUS:

The defendant is an adequately nourished African-American male. He was
also adequately groomed and dressed in typical jail attire. He appeared to be
his stated age of thirty-eight years. His observable motor functions were
normal. He was cooperative and forthcoming.

The defendant would make adequate eye contact and also frequently glance
around the room. His speech was articulate, though often quickly paced. His
thoughts could be coherent, they were generally concrete and not
infrequently disrupted by his delusional concerns. He reports a variety of
paranoid delusions. He fears being beaten by a "crew" of deputies. He feels
there is something wrong with his food. He fears being shot by someone in
the audience with a pistol when he is attending court. He also reports that he
is always worried about people, in that he feels he is being followed by
people who have previously shot him and they want to shoot him again. He
also related somatic concerns, describing that his eyes were hurting and he
fears that he has cancer or that he has been radiated. He also reports
auditory hallucinations, some of which relate to his experience of being shot
in 1991. Associated with these thoughts he also expressed concerns about
when he was previously shot in 1999. He states that the individual shot at
him seven times and finally shot him with the last bullet, which he describes
as a nine-millimeter high velocity bullet. He showed me scars from this
incident that came down from his biceps to his elbow.

The defendant's overall mood was somewhat expansive and his affect was
moderately labile. He not infrequently smiled, could also become agitated
and briefly despondent. His emotional expressions were intense and he
tended to be somewhat jittery. Nevertheless he remained engaged with the
examiners communications.

-29

CONFIDEINTIAL                                                June 13, 2005
Report to: Honorable Thomas Reardon                              Page Three
RE: Jeff Hawkins

The defendant was not entirely oriented to time and in general was not sure
of the date of past events. He was attentive and episodically sustained his
concentration. He was able to count backwards twenty to one in fifteen
seconds. He was able to immediately repeat the names of three common
items, but was unable to recall these names after a four-minute delay. He
was able to correctly repeat a twelve-word sentence. He was able to
correctly spell backwards the word "world". He was unable to correctly
perform serial sevens, consecutively subtracting seven from one hundred. He
was able to correctly perform serial threes, consecutively subtracting three
from one hundred. He was able to perform basic, simple mathematics. His
vocabulary was limited but adequate. His verbal abstractions tended to be
concrete. He was also unable to explain the meanings of some basic
proverbs. His fund of general information was uneven. He did not know the
names of the states bordering California. However, he was able to name
some recent Presidents of the United States, the capital of California and the
direction traveling from San Francisco to Los Angeles.    Also his
comprehension of social situations and problems was quite uneven.
Significant cognitive deficiencies are indicated.

DEFENDANT'S RELEVANT HISTORY AND LIFESTYLE:

The defendant reports that he was born and raised in Oakland, California.
He lived with his mother and brother. He had infrequent contact with his
father. He states that he was depressed as a child. He describes his mother
as a Cocaine addict, who was physically abusive. He states: "I was hit all
the time by her." One physical incident involved her hitting him with a
frozen roast in the back of the head. He states that as a result he was knocked
unconscious and had to have stitches. He also reports that he lived with his
mother in a studio apartment and she had many male friends, who were also
using Cocaine. He describes a series of her male friends briefly residing in
their apartment.    He also states that he was close to his brother and
protecting him in the neighborhood by fighting for him. In school the
defendant reports that he was good in English but was poor in Math. He
dropped out of the eleventh grade, never to return to school.

r r  **469**

CONFIDENTIAL

June 13, 2005

Report to: Honorable Thomas Reardon

Page Four

RE: Jeff Hawkins

The defendant reports that he started to use Marijuana when he was about nine years old. Soon he was also using alcohol and Cocaine. By the time he was fourteen years old he states that Cocaine was his preferred drug, and he has continued to use this substance throughout most of his adulthood. He has attended a few drug rehabilitation programs. The most recent program he attended was from December of 2003 until April of 2004. He states that he was very much helped by this program but occasionally had been using drugs.

The defendant reports that he did construction work when he left high school. However, he was placed in the Youth Authority for receiving stolen property from eighteen to twenty-one years of age. He also reports having had about four drug possessions and drug sales charges. He also reports having a robbery charge in December of 2002, which resulted in a one-year prison term. He states that he was arrested in April of 2004 resulting in his present incarceration and that he was charged with "aggravated mayhem."

Mr. Hawkins reports that he was married when he was twenty-one years old and that he was divorced when he was twenty-eight years old. By this marriage he has a twelve-year old daughter. He states that he continues to have some contact with his daughter and in the past with his ex-wife. For example, he was brought to the Alta Bates Medical Center, Psychiatric Unit by his ex-wife, in February of 1999.

His medical records of February 1999 indicates that he suffers for Schizophrenia, Paranoid Type. Also a history of Cocaine dependence and abuse is reported. His global assessment of functioning at that time indicates impairment in reality testing and auditory hallucinations that indicate that he is being threatened by others. It is also indicated that he was responsive to anti-psychotic medications. His psychiatric records of December 2001 from Alta Bates Medical Center indicate that he had a history of psychotic symptoms dated back to 1995. His admitting diagnosis was acute exacerbation of paranoid schizophrenia. He was experiencing auditory hallucinations that were giving him commands to harm himself. His psychiatric records of January 2002 also give a diagnosis of paranoid schizophrenia and withdrawal from Cocaine. His psychiatric records of July

ADDENDUM C

, 3l

' 470

CONFIDENTIAL                                June 13, 2005
Report to: Honorable Thomas Reardon                 Page Five
RE: Jeff Hawkins

2002 indicate chronic symptoms of paranoid schizophrenia. He is described as exhibiting obvious paranoid ideation. He is also described as responding favorably to anti-psychotic medication.

His medical records of April 2004 indicate a diagnosis of paranoid schizophrenia. He is described as having a flattened affect and being suspicious and guarded. Anti-psychotic medication has been prescribed, which he feels is helping him to some degree. For example, he states that he has recently been able to start to read because of his medication.

## EVENTS ASSOCIATED WITH THE DEFENDANT'S CHARGES:

The defendant reports that he does not have developed memories for the events associated with his charges. He states that all that he can recall is standing at the door of his friend's house with a baseball bat. He also cannot recall the events of the several days proceeding his arrest. He is not sure if he was using drugs and describes himself as benefiting from the drug rehabilitation program he was attending prior to his arrest.

According to the proceedings of the defendant's preliminary hearing, witnesses describe the defendant as unusually withdrawn, self-preoccupied, talking to himself, asking others if they had heard "that", stating "their calling me." Moreover, just prior to the incident resulting in his arrest he poured a gallon of turpentine outside the house and inside the house where the alleged victim was living at the time. When asked why he was doing this, he stated that he was trying to make the "room smell better." Soon after the alleged assault on the victim with a baseball bat, other members of the residence screamed at the defendant and he is described as casually walking out the front door.  The defendant is also reported as telling one of his friends in the area that the alleged victim had just told him that he was one of the individuals who had previously shot him.

## IMPRESSIONS AND CONCLUSIONS:

The defendant clearly presents serious mental disorders.  Most importantly he suffers from Paranoid Schizophrenia, which as indicated by his history,

32

ADDENDUM   C                          ′  471

CONFIDENTIAL                                    June 13, 2005
Report to: Honorable Thomas Reardon              Page Six
RE: Jeff Hawkins

frequently lapses into acute exacerbation. Moreover, even currently when he is receiving anti-psychotic medication his consciousness is plagued by paranoid thoughts and fears.

**It is my opinion that the defendant at the time of his alleged offenses was in an acute exacerbation of his paranoid schizophrenia. Moreover, as a result of his delusions he did not comprehend the wrongfulness of his acts associated with his charges. Therefore, it is my opinion that the defendant fulfills the criteria for being not guilty by reason of insanity.**

It is also my opinion that at the time of my evaluation the defendant was <u>not</u> sufficiently competent to stand trial. In particular, his thoughts associated with attending his court proceedings were invaded by his fears of being shot by someone in the audience of the court. Therefore, considering that his cognitions would be significantly impacted by these paranoid fears the defendant would be unable to aid his attorney in his own defense. However, the defendant does appear to be benefiting from anti-psychotic medication. The defendant also has sufficient insight that he is aware that psychotropic medications are beneficial to him. It would be my expectation that the defendant would eventually be able to take his psychotropic medications and continues to compensate. Also further psychiatric examination could be helpful to determine if his medication regime could be developed further to enhance his progress. Considering that the defendant is just in the midst of compensating from an acute exacerbation of his paranoid schizophrenia, he probably remains a danger to himself or others at this current time.

Please contact me Your Honor if there are further questions regarding my evaluation of the defendant, Jeff Hawkins. Thank you for providing me the opportunity to consult with you regarding this individual.

19

*472*

CONFIDENTIAL

June 13, 2005

Report to: Honorable Thomas Reardon

Page Seven

RE: Jeff Hawkins

Respectfully submitted,

Henry P. Hoey, Ph.D.
Clinical Psychology
CA Board of Medical Examiners
PSY3681

HPH:dlw

20

AFFIDAVIT

Regina Mikell
256 Addison St.
San Francisco California.
(415) 595-0286.

To Whom it concerns,                    1/2/08
I Regina Mikell had Jeff A. Hawkins admitted to the psy hospital in Alta Betas Hospital in Berkeley. He was unable to sleep for 3 days prior and was imagines invisable tiny people talking to him. He also complain to me that his head hurt bad but he did not have any injury to it. At that time Jeff did not Know where he was or what day or year it was. Please obtain his medical records from Alta Betas hospital. He was admitted for 2 weeks there and follow up care was with Berkeley Mental Health. I'm sorry I can't remember the exact day, month or year off this incident. But I do know he has suffered from mental illness for years and has medication prescribe to him

                              Regina
Regina Mikell
256 Addison St
SF CA 94131
(415) 595-0286

1

EXHIBITS

Mental Health Records, Placements/

Chronological Interdisciplinary Progress notes



**ZACK**

**PRODUCTS CORPORATION**

800-344-FILE (3453)

**INSTRUCTIONS**

To mount report, pull off the plastic tab. Position report edges to top and side guide lines, then press the report down over the exposed adhesive.

The adhesive is *pressure-sensitive:* be sure to press the report over the adhesive area.

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC FORM 128-C

**SECURITY HOUSING UNIT (SHU) MENTAL HEALTH SCREENING**

CDC NUMBER: F 18885    NAME: Hooker    HOUSING: A2-116

Information utilized for completion of this chrono was obtained from the unit health record and previous clearance completed on _____

1. ☑ Meets criteria for inclusion in the Mental Health Services Delivery System (MHSDS). Circle appropriate level of care:   CCCMS/EOP/MHCB/DMH

2. ☑ Has additional Pelican Bay State Prison SHU exclusionary criteria: Delusional disorder; Schizophreniform disorder; Schizoaffective disorder; Brief psychotic disorder; Substance-induced psychotic disorder (excluding intoxication and withdrawal); Psychotic disorder not otherwise specified; Major Depressive disorder; Bipolar Disorder I or II; any mental disorder which includes inmate being actively suicidal; any mental illness characterized by breaks with reality or perceptions of reality leading to significant functional impairment; Organic Brain Syndrome consistent with significant functional impairment; severe personality disorder manifested by frequent episodes of psychosis or depression and resulting in significant functional impairment; mental retardation.

3. ☐ Does not meet criteria for inclusion in the Mental Health Services Delivery System (MHSDS) and does not have additional exclusionary criteria (see #2 above) that would prohibit PBSP-SHU placement.

Date: 6/28/06   Institution: PBSP   Clinician: _____

cc:  C-File
     CCII
     Health ____

SHU90CHR.DOC

## MENTAL HEALTH PLACEMENT/REMOVAL

NAME: _Hawkins, Jeff_ CDC#: _F18885_ HOUSING: _A2-116_ DATE: _6/28/06_

## COMPLETE SECTION "A" OR "B" AS APPROPRIATE:

**A.** This inmate has completed a mental health assessment with the following results:

☐ DOES NOT MEET COURT ORDERED AT RISK CRITERIA FOR EXCLUSION FROM SHU     ☑ MEETS COURT ORDERED AT RISK CRITERIA FOR EXCLUSION FROM SHU

☐ DOES NOT MEET CRITERIA FOR INCLUSION IN THE MENTAL HEALTH TREATMENT POPULATION     ☑ MEETS INCLUSION CRITERIA FOR THE MENTAL HEALTH TREATMENT POPULATION

☑ No     ☐ Yes     Inclusion is based upon Medical Necessity. (Obtain Chief Psychiatrist/Designee signature.)

☐ PRESENTLY INCLUDED IN MENTAL HEALTH TREATMENT POPULATION, **NEW LEVEL OF CARE.**

Level of Functioning Assessment (GAF) score or equivalent: _55_     Psychotropic Medication: YES: ☐ NO: ☐

Behavioral Alerts:_____

**Previous Level of Care:**
☐ Inpatient DMH.     ☐ Crisis Beds (MHCB)     ☐ Enhanced Outpatient (EOP)     ☑ Clinical Case Management (C$^3$MS)
☐ NO Mental Health Needs     ☐ Other:_____

**Treatment Team's Current Level of Care Recommendation:**
☐ Inpatient DMH.     ☐ Crisis Beds (MHCB)     ☐ Enhanced Outpatient (EOP)     ☑ Clinical Case Management (C$^3$MS)
☐ NO Mental Health Needs     ☐ Other:_____

**B.**     THIS INMATE HAS COMPLETED A MENTAL HEALTH ASSESSMENT AND <u>DOES NOT MEET CRITERIA FOR INCLUSION IN THE MENTAL HEALTH TREATMENT POPULATION.</u> (Check applicable box below.)

☐ As of _____ this CCCMS inmate is in remission and free of psychotropic medication. Clinical discharge from Mental Health Treatment Population will be on _____.

☐ The inmate is removed from the Mental Health Treatment Population.

☐ The inmate's clinical situation was one of medical necessity as diagnosed by CDC clinical staff on _____. Medical necessity is no longer applicable, treatment has stopped and the inmate is removed from Mental Health Treatment Population.

☐ This inmate was initially designated as a Mental Health Treatment Population patient at a Reception Center or institution without a Mental Health Treatment Population program. Within the last 90 days the inmate has transferred to a Mental Health Treatment Population facility and a review of the inmate's Unit Health Record and assessment by the Interdisciplinary Treatment Team concludes the inmate does not meet the criteria for continued inclusion in the Mental Health Treatment Population.

Additional Information:_____ _Prior records request: 6/13/06_ _____

Original: Health Record

cc:     CC-II
        C-File

_____     _____
Treatment Team Chairperson          Chief Psychiatrist or Designee

DATE: _6/28/06_ NAME: _Hawkins_ CDC# _F18885_ HOUSE: _A2-116_     128-C PBSP

5

**Chronological interdisciplinary Progr  Notes** State of California. Department c  rrections -**Pelican Bay State Prison**

**Date:** 07-12-2006 **Time:** 1330 **Chart available?** YES **Reason for visit?** MH CM FU 30 DAY CCCM **Location of Visit:** B FACILITY PROG

**S:**

| Entry By | Entry Dt/Tm | Notes |
|---|---|---|
| JACKSON MSW, HOLLI | 07-12-2006 1131 | Hawkins, Jeff |

07.12.2006
0930 Hrs

S: I/M seen in B Yard Program Offices. "I am Paranoid Schizophrenic, 5150." I/M reports the following: Shot in head in 1991, subsequently started hearing voices telling him that various people he encountered were the ones that shot him, and that he should "take action." He says the voices tell him that if he does take action, no bad consequences will happen. The I/M says he ignored a worsening of the voices while in community outpatient tx, assaulted someone, and "now I'm here." He says he will keep track of the symptoms, and ask for help if they start to get worse. He denies current A/V H and S/H I. I/M reports previous substance abuse Tx, and no MH Tx prior to gunshot to head. I/M reports he stopped receiving Benadryl 2 days ago, and would like to have it restarted. I/M reports he's done two-and-a-half years with thirty to go, has 57 or 59 points, and would like to be housed at Vacaville or Old Folsom.

O: I/M presents as slightly disheveled and soft spoken. He is cooperative and polite. Speech is linear, rational and goal directed. No evidence of response to internal stimuli is observed in this meeting. I/M appears in no apparent distress. He shows an interest in a brief explanation of how his current Dx differs from Schizophrenia.

A: 293.82 Psychotic Disorder With Hallucinations Due to Head Trauma

P: Retain on 30 day CM FU schedule. Discuss Sx management. Monitor for Sx of psychosis.

Holli Jackson, MSW
Clinical Social Worker

☒ SEE PAGE 2

**Signature:** **Print Name:** **Phd / LCSW / MD / PsyTech/ Other:**

| **MENTAL HEALTH** INTERDISCIPLINARY PROGRESS NOTE **MH3 (10/11/02)** Confidentail Client/Patient Information See W & I Code, Section 5328 | Level of Care INPATIENT Outpatient | Last Name: HAWKINS CDC#: F18885 | First Name: JEFF HOUSE: B05U213L | MI: A |

Exhibit

| Chronological Interdisciplinary Progress Notes | State of California. Department of Corrections -Pelican Bay State Prison |

**Date:** 06-13-2006 **Time:** 1300 **Chart available?** YES **Reason for visit?** MH NEW ARRIVAL   **Location of Visit:** A FACILITY PROG

**S:**

| Entry By | Entry Dt/Tm | Notes |
|----------|-------------|-------|
| BUTLER PHD, PAUL | 06-13-2006 0832 | Date: 06/13/06 |

Time: 0800

S-I am a new arrival from SQ. I have a hx of paranoia, of hearing voices telling me that others will harm me and to harm others. I picked up this case as a result of my paranoia. I thought I saw the guy who shot me and attacked him. I have a sentence of 30 yrs for attempted murder, assault with a deadly weapon, mayhem. I also have a hx of being in juvenile hall. I was in CYA but the charges were dropped. My medications are moderately effective in helping to reduce the voices. I was shot in the head in 1991 and the voices began at that time. I also have a hx of addiction to alcohol and cocaine. I am not suicidal at this time or homocidal. I do not have visual hallucinations. The voices to harm others come and go.

O-I/M new arrival from San Quentin. Tall, subdued mood, cooperative and conversant with interview.

A-I/M reports having been 5150'D more than once while in the City of Berkeley. Appears to suffer from a psychotic disorder due to trauma to head. Medication compliant. Denies any hx of attempting to take his own life.

P-Plan is to refer I/M to IDTT.

Paul C. Butler, Ph.D.
Clinical Psychologist

**O:.** Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgement, Thought processes and content, Suicidal and/or homicidal ideation

:

⊠SEE PAGE 2

| **Signature:** | **Print Name:** | | **Phd / LCSW / MD / PsyTech/ Other:** | |
|----------------|-----------------|--|---------------------------------------|--|

| **MENTAL HEALTH** **INTERDISCIPLINARY PROGRESS NOTE** **MH3 (10/11/02)** Confidentail Client/Patient Information See W & I Code, Section 5328 | Level of Care | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| | **INPATIENT** | HAWKINS | JEFF | A |
| | Outpatient | CDC#: F18885 | HOUSE:  A02L116L | |

7

Chronological Interdisciplinary Progress Notes — State of California. Department of Corrections and Rehabilitation — Pelican Bay State Prison

Case 3:09-cv-01482-MHP    Document 82-4    Filed 08/17/2008    Page 66 of 73

### PSYCHIATRIC MEDICATIONS (optional for clinicians):

| Drug | Dosing | Duration | Target Symptom(s) |
|------|--------|----------|-------------------|
| DIPHENHYDRAMINE 50 MG CAP | 100 MG | 90 | |
| DIPHENHYDRAMINE 50 MG CAP | 100 MG | | |
| DIPHENHYDRAMINE 50 MG CAPS | 50 MG | 14 | |
| DIPHENHYDRAMINE 50 MG CAPS | 50 MG | | |
| RISPERDAL 3MG TABLET | 6 MG | 90 | |
| RISPERDAL 3MG TABLET | 6 MG | | |
| ZYPREXA 10 MG TABLET | 20 MG | 90 | |
| ZYPREXA 7.5 MG TABLET | 15 MG | 14 | |
| ZYPREXA 7.5 MG TABLET | 15 MG | | |
| ZYPREXA 7.5MG TABLET | 15 MG | 90 | |

Response, blood level, lab results, **compliance** , anticipated duration, etc...

**Entry By:**            **Entry Dt/Tm:**

**Signature:** MPIMSTDJ, JUSTICE, PSY **Print Name:** JUSTICE, PSYMD , TIMOTHY  **Phd / LCSW / MD / PsyTech/ Other:**

| MENTAL HEALTH<br>**INTERDISCIPLINARY PROGRESS NOTE**<br>**MH3 (10/11/02)**<br>Confidentail Client/Patient Information<br>See W & I Code, Section 5328 | Level of Care<br><br>INPATIENT<br><br>Outpatient | Last Name:<br>HAWKINS<br><br>CDC#: F18885 | First Name:<br>JEFF<br><br>HOUSE: A06U205U | MI:<br>A |
|---|---|---|---|---|

| Chronological Interdisciplinary Progress Notes | State of California. Department of Corrections -**Pelican Bay State Prison** |

**O:** Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgement, Thought processes and content, Suicidal and/or homicidal ideation

**A:** Diagnosis & Discussion
Treatment team's diagnosis per MH 2 *first.* then concur, purpose, etc...., *with supportive dicussion* condition case formulation, data analyses, etc...

**Diagnosis**

| Diagnosis | Axis | GAF | GAF Basis | Notes |
|---|---|---|---|---|
| 999999 - 293.82 PSYCHOTIC DIS DUE HEAD TRAUM | I | 55 | | |
| 999999 - HEAD TRAUMA | III | | | |
| 999999 - LENGTHY SESSION | IV | | | |
| 799.9 - OTH UNKN&UNS CAUSE MORBDTY/MRTALTY | II | | | |

| Entry By | Entry Dt/Tm | Notes |
|---|---|---|
| | | |

**P:** Follow-up care/appt., *medication changes without rationale,* treament recommendations, AIMS, consents, diagnositc studies, patient education, etc...

| Entry By | Entry Dt/Tm | Notes |
|---|---|---|
| | | |

**PSYCHIATRIC MEDICATIONS** (optional for clinicians):

| Drug | Dosing | Duration | Target Symptom(s) | Response, blood level, lab results, **compliance**, anticipated duration, etc... |
|---|---|---|---|---|
| | | | | |

| Entry By | Entry Dt/Tm | Notes |
|---|---|---|
| | | |

| Signature: | Print Name: | | Phd / LCSW / MD / PsyTech/ Other: | |
|---|---|---|---|---|
| **MENTAL HEALTH** **INTERDISCIPLINARY PROGRESS NOTE** **MH3 (10/11/02)** Confidentail Client/Patient Information See W & I Code, Section 5328 | Level of Care **INPATIENT** Outpatient | Last Name: HAWKINS CDC#: F18885 | First Name: JEFF HOUSE: B05U213L | MI: A |

9

Case 3:08-cv-01482-MHP    Document 1    Filed 03/17/2008    Page 68 of 73

Date: 11-29-2007  Time: 1200  Chart available? YES  Reason for visit?  MH CM REFERRAL BY ME  Location of Visit:  MH A FACILITY

**S:** Entry By: JACKSON, MSW, HOLLI                 Entry Dt/Tm: 11-29-2007 1318

I/P seen in response to referral from medical staff on this date indicating, "...states that he has a history of Paranoid Schizophrenia; states he's hearing voices that the people who shot him in the past are out on the yard." In this emergency eval session conducted in a confidential setting at the I/P's work site (auto body shop), the I/P states he asked for the referral because he has read in his court transcript a statement recommending that he go to a mental health treatment facility rather than a prison. I/P states he wants to initiate an appeal (602) process seeking this outcome, and he felt that addressing a request through mental health services was a first step. I/P also states that prior to his commitment offense, his habit was to check himself into a hosptial when he felt overly influenced by AH, "except for this one time." He says that as a result of the committment offense, he realizes that he now needs always to ask for help when the AH become difficult for him. He also reports that his recent increase in Zyprexa produced some relief in AH, but that he was thinking of asking for a decrease because of the side effects, especially puffiness around the eyes. In this session he appears in NAD related to mental health status.

In this session, the I/P does not complain of increased severity of AH or of increased distress over AH or other psychotic sx. Rather, his concern seems focused on legalistic avenues toward his goal of getting to a mental health treatment facility from his current correctional setting. Therefore, no referral for psychiatry or increased LOC is generated as a result of this interview.

---

**O:** Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgement, Thought processes and content, Suicidal and/or homicidal ideation

Appearance - WNL. Behavior - WNL. Speech - WNL. Orientation - x4. Cognition - WNL. Memory - WNL. Concentration - WNL. Affect - WNL. Mood - WNL. Insight - WNL. Thought processes and content - No problems evident in this session. Suicidal and/or homicidal ideation - No indicators present.

---

**A: Diagnosis & Discussion**
Treatment team's diagnosis per MH 2 _first_ then concur, purpose, etc..., _with supportive discussion_ condition case formulation, data analyses, etc...

| Diagnosis | Axis | GAF | GAF Basis | Notes |
|---|---|---|---|---|
| 298.9 - PSYCHOTIC DISORDER NOS | I | 65 | | 293.82 Psychotic DO W Halluc due to Head Trauma |

Entry By:                                 Entry Dt/Tm:

---

☒ SEE PAGE 2

**Signature:** MPIMSHVJ, JACKSON, MS  **Print Name:** JACKSON, MSW , HOLLI     **Phd / LCSW / MD / PsyTech/ Other:**

| **MENTAL HEALTH** **INTERDISCIPLINARY PROGRESS NOTE** **MH3 (10/11/02)** Confidential Client/Patient Information See W & I Code. Section 5328 | Level of Care **INPATIENT** Outpatient | Last Name: HAWKINS CDC#: F18885 | First Name: JEFF HOUSE:  A06U205U | MI: A |

## Declaration OF Jeff Hawkins

Petitioner, Jeff Hawkins has filed a Petition of Habeas Corpus

pursuant to 28 U.S.C.S. 2254.

In the United States District Court for the Northern District of

California.

In the Above Entitlement, Petitioner Jeff Hawkins is currently

incarcerated at Pelican Bay State Prison. P.O. Box 7500.

Lakeearl Drive 5905 Crescent City, California. 95532-7500.

The information thereof is true and correct to the best of the

Petitioner knowledge.

Petitioner is a laymen at the law and has render the assist's of

another inmate to process the claims forward to the District Court

and has tried to the best of his ability to file a compelet and

accurate application as required by the law.


                    The,foregoing is true and correct to the best
                        of Petitioner's knowledge.




    _____                        _____
        3.09.08                                   (signature)
        Dated:                                      Signature;

## PROOF OF SERVICE BY MAIL

(C.C.P. Sec. 101a #2015-5, U.S.C. Sec. 1746)

I, **Jeff Hawkins**_____, am a resident of Pelican Bay State Prison, in the County of

Del Norte, State of California. I am over the age of eighteen (18) years and am a party to this action.

**205**

My State Prison address is: Pelican Bay State Prison, P.O. Box 7500, Housing Unit **A-6-** Cell

Number **7500**, Crescent City, CA  95532-7500.

On the **9** day of **March 2008.** _____, I served the following (set forth the exact

title of document[s] served):

**Petition for writ of Habeas Corpus**
_____

**U.S.C. 2254**
_____

_____

On the party(s) herein by placing a true copy(s) thereof, enclosed in a sealed envelope(s), with

postage thereon fully paid, in the United States mail, in a receptacle so provided at Pelican Bay State

Prison, Crescent City, CA  95532, and addressed as follows:

**United States District CT.**        _____

**FOR Northen District Ca.**        _____

**450 Golden Gate Av. Box36060**    _____

**San Franicsco, Ca. 94102.**        _____

I declare under penalty of perjury that the foregoing is true and correct:

**March 9, 2008.**

Inmate Signature                Date

Printed Date: 06/19/2007

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
DIVISION OF ADULT OPERATIONS
Death Row Tracking System
Condemned Inmate List (Secure)

| LastName | First Name | Status Code | Ethnic Code | Received Date | Sentence Date | Offense Date | Trial County | Court Action |
|---|---|---|---|---|---|---|---|---|
| GOVIN | VIRENDRA | Living | OTH | 01/05/2005 | 12/21/2004 | 05/04/2002 | Los Angeles | No Action |
| GRAHAM | LARRY | Living | WHI | 01/31/2003 | 01/31/2003 | 11/19/1983 | Contra Costa | No Action |
| GRANT | RICHARD | Living | WHI | 05/28/1982 | 05/28/1982 | 05/15/1980 | Shasta | Affirmed |
| GRAY | MARIO | Living | BLA | 03/21/1990 | 03/14/1990 | 08/24/1987 | Los Angeles | Affirmed |
| GRIFFIN | DONALD | Living | WHI | 12/04/1980 | 12/03/1980 | 12/13/1979 | Fresno | Affirmed |
| GRIMES | GARY | Living | WHI | 02/01/1999 | 01/27/1999 | 10/18/1995 | Shasta | No Action |
| GUERRA | JOSE | Living | OTH | 12/06/1993 | 11/22/1993 | 10/25/1990 | Los Angeles | Affirmed |
| GUTIERREZ | ALFRED | Living | HIS | 08/19/1998 | 08/10/1998 | 10/11/1996 | Los Angeles | No Action |
| GUTIERREZ | ISAAC | Living | HIS | 12/14/1990 | 11/14/1990 | 10/31/1986 | San Bernardino | Affirmed |
| HAJEK | STEPHEN | Living | WHI | 10/25/1995 | 10/18/1995 | 01/18/1995 | Santa Clara | No Action |
| HALE | BRIAN | Living | WHI | 08/31/1981 | 08/24/1981 | 11/02/1980 | Los Angeles | Reversed/a |
| HALEY | KEVIN | Living | BLA | 10/12/1988 | 10/03/1988 | 09/27/1984 | Los Angeles | Reversed/a |
| HALVORSEN | ARTHUR | Living | WHI | 11/28/1988 | 11/18/1988 | 03/31/1985 | Los Angeles | No Action |
| HAMILTON | BERNARD | Living | BLA | 03/04/1981 | 03/02/1981 | 05/31/1979 | San Diego | Affirmed |
| HAMILTON | BILLY | Living | WHI | 10/19/1981 | 10/16/1981 | 09/05/1980 | Contra Costa | Affirmed |
| HAMILTON | MICHAEL | Living | WHI | 12/21/1982 | 12/17/1982 | 11/02/1981 | Tulare | Affirmed |
| HARDY | JAMES | Living | WHI | 02/09/1984 | 02/01/1984 | 05/21/1981 | Los Angeles | Affirmed |
| HARDY | WARREN | Living | BLA | 02/03/2003 | 01/23/2003 | 12/29/1998 | Los Angeles | No Action |
| HARRIS | LANELL | Living | BLA | 01/24/1994 | 01/12/1994 | 08/07/1991 | Los Angeles | No Action |
| HARRIS | MAURICE | Living | BLA | 12/30/1996 | 12/20/1996 | 08/09/1994 | Los Angeles | Affirmed |
| HARRIS | WILLIE | Living | BLA | 08/26/1999 | 08/24/1999 | 05/20/1997 | Kern | No Action |
| HARRISON | CEDRIC | Living | BLA | 08/30/1993 | 08/30/1993 | 04/27/1987 | Alameda | Affirmed |
| HART | WILLIAM | Living | WHI | 06/01/1988 | 05/27/1988 | 03/24/1986 | Riverside | Affirmed |
| HARTSCH | CISCO | Living | HIS | 11/19/1998 | 11/13/1998 | 06/15/1995 | Riverside | No Action |
| HASKETT | RANDY | Living | BLA | 09/04/1979 | 08/28/1979 | 10/23/1978 | Los Angeles | Affirmed |
| HAWKINS | JEFFREY | Living | WHI | 02/09/1990 | 01/31/1990 | 03/04/1987 | Sacramento | Affirmed |

Page: 10

*(handwritten annotations)*
Attached complaint to a
Jeffy Hawkins — Same inmate?
represented by a lawyer
No CDC #
(No white check)
Jac-1



UNITED STATES POSTAGE

$ 05.70⁰

PITNEY BOWES

02 1M
0004217666    MAR 11 2008
MAILED FROM ZIP CODE 95531

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532



UNITED STATES POSTAGE

PITNEY BOWES

$ 05.70

02 1M
0004217666
MAILED FROM ZIP CODE 95531

02 1M
MAR 1 201

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532